DIAZ, J.,
for the Court:
¶ 1. EB, Inc. brought suit against Roger D. Smith to enforce a promissory note and deed of trust executed by Smith. The Hinds County Chancery Court found that the statute of limitations precluded EB’s suit against Smith and dismissed the action with prejudice. On appeal, EB contends (1) the statute of limitations was tolled because Smith expressly acknowledged and promised to repay the indebtedness by continuing to make monthly payments after the balloon payment became due, and (2) Smith should be equitably estopped from avoiding the indebtedness due to his knowledge that the balloon payment had become due and his subsequent failure to pay. We find EB’s contentions meritless and affirm.
*1019 FACTS
¶ 2. On April 23, 1982, Roger D. Smith executed a promissory note in the amount of $38,000 secured by a deed of trust in favor of Depositors Savings Association, predecessor in interest to Eastover Bank for Savings.[1] The promissory note provided for a final balloon payment which matured on May 1, 1987, at which time the remaining indebtedness under the note would become due and payable. Due to a clerical error, EB failed to demand the final balloon payment from Smith, who has since admitted that he was aware that the balloon payment was due. Smith continued to make monthly payments in the amount designated by the monthly payment coupons EB continued to send him. Smith made a total of seventy-four monthly payments following the date on which the balloon payment was due. He eventually ceased making payments on the advice of his attorney and accountant who informed him a lawsuit on the note would be barred by the applicable statute of limitations.
¶ 3. On June 30, 1994, EB and the trustee under the deed of trust instituted an action in the Hinds County Chancery Court, seeking a declaration that the promissory note and deed of trust be adjudicated in default and that a judicial sale be ordered. Alternatively, EB sought a judgment against Smith for the outstanding indebtedness on the promissory note. Following a trial in the Hinds County Chancery Court, the chancellor dismissed the action with prejudice, concluding that the statute of limitations barred EB’s suit. The chancellor entered an order canceling both the promissory note and the deed of trust.
DISCUSSION
¶4. We review factual determinations made by a trial judge sitting without a jury under the substantial evidence standard. Hill v. Thompson, 564 So.2d 1, 10 (Miss.1989). We will not disturb the findings of a chancellor when they are supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Herring Gas Co. v. Whiddon, 616 So.2d 892, 894 (Miss.1993).
I. WHETHER THE STATUTE OF LIMITATIONS BARRED EB, INC.’S SUIT TO ENFORCE THE PROMISSORY NOTE AND DEED OF TRUST
¶ 5. EB contends that the chancellor erred in determining 'that the statute of limitations barred its suit against Smith on the promissory note and deed of trust. It argues that because Smith continued to make seventy-four additional payments after the balloon payment became due, he expressly acknowledged the loan and agreed to its repayment, thereby tolling the statute of limitations. Consequently, EB urges that we find the statute of limitations does not bar its suit against Smith. We decline to do so.
¶ 6. “The rule in Mississippi is that a partial payment does not take a case out of the operation of the running of the statute of limitations unless such partial payment is accompanied by (1) an express acknowledgment of a further indebtedness, and (2) an express promise to pay.” United States Fidelity & Guaranty Co. v. Krebs, 190 So.2d 857, 861 (Miss.1966). “[A] written acknowledgment of an indebtedness is not sufficient to take such indebtedness out of the statute of limitations where such an acknowledgment is vague and indefinite.... [I]n order for an acknowledgment to bar the statute of limitations it [is] imperative to state when the balance was due, to whom the balance was due, and for what the balance was due.” Id. (citing Trustees of Canton Female *1020 Academy v. Gilman, 55 Miss. 148 (1877)). An acknowledgment of the debt must contain both “a specification of the debt referred to and a promise to pay a fixed amount.” Id. (citing Fletcher v. Gillan, 62 Miss. 8 (1884)). Finally, the acknowledgment of the debt and the promise to pay must be definite and unequivocal. Id. (quoting Philp v. Hicks, 112 Miss. 581, 73 So. 610, 612 (1917)).
¶ 7. In the present case, Smith made seventy-four individual payments to EB in accordance with the amount designated on the payment coupons EB continued to send each month. These monthly payments did not unequivocally acknowledge “when the balance was due, to whom the balance was due, and for what the balance was due.” Moreover, Smith’s payments did not contain “a specification of the debt referred to and a promise to pay a fixed amount.”
¶ 8. In United States Fidelity & Guaranty Co. v. Krebs, 190 So.2d 857, 858 (Miss.1966), USF & G brought suit to recover the unpaid balance on a demand promissory note executed on March 2, 1955. The defendant contended that USF & G’s lawsuit was barred by the statute of limitations. Id. USF & G alleged that because the defendant had made partial payments, he had expressly acknowledged his further indebtedness and promised to pay, thus tolling the statute of limitations. Id. at 859. Moreover, the defendant’s partial payment was accompanied by a letter to USF & G explaining his inability to pay the full amount. Id. at 860. The defendant’s letter provided, “I would propose for the time being, to make a payment of $500.00 on this account, until such time as more definite information can be obtained with regards to the refunds.... ” Id.
¶ 9. The supreme court held that partial payment,, coupled with the letter, did not constitute an express acknowledgment of the debt and express promise to pay. Id. at 862. The court explained “we cannot hold that the letter ... expressly acknowledges a further indebtedness remaining nor a promise to' pay such indebtedness because it is indefinite and vague and wholly fails to meet the requirements as laid down by this Court.... The letter is far from being definite and unequivocal in its terms but deals in generalities with the tax difficulties of the appellee rather than the obligation of the appellee to pay the indebtedness.” Id. at 861-62.
¶ 10. In the instant case, the chancellor found that “[u]nder Mississippi law, the obligation to pursue their claims fell to [EB] as of May 1, 1987, when the final balloon payment on the note became due. Though [Smith] made partial payments after this date, [EB] acted at [its] peril in assuming those payments would continue.... [EB], having failed to pursue [its] claim before the running of the statutory period, is barred from pursuing this action.” Smith testified he never signed anything promising that he would continue to make payments. According to Smith, the only promise he made was to “pay them until ’87, when the balloon note had matured.”
¶ 11. At the time EB’s cause of action arose, the applicable statute' of limitations was six years. See Miss.Code Ann. § 15-1-49 (1972) (controlling all actions for which no limitations period is prescribed). Effective July 1,1989, the Mississippi Legislature amended § 15-1-49 so that the period of limitations was reduced to three years.
¶ 12. EB’s cause of action arose in May of 1987 when the balloon payment was due under the promissory note. EB made no effort to collect the payment until June 30, 1994, more than six years later. Consequently, EB’s claim is barred by the statute of limitations, as is the trustee’s attempt to enforce the deed of trust. See Miss.Code Ann. § 15-1-21 (Rev.1995).
II. WHETHER SMITH SHOULD BE EQUITABLY ESTOPPED FROM . RAISING THE STATUTE OF LIM- ' ITATIONS DEFENSE
*1021 ¶ 13. Alternatively, EB argues that Smith should be prohibited from relying upon the statute of limitations because of his own misconduct in continuing to make the monthly payments when he knew that the balloon payment was due. EB claims that Smith intentionally failed to make the balloon payment when he was aware that he was required to do so. It argues that it relied upon continuance of these payments and therefore did not call the loan, force its repayment, or foreclose on the property.
¶ 14. A party asserting equitable estoppel must show (1) that he has changed his position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct. PMZ Oil Co. v. Lueroy, 449 So.2d 201, 206 (Miss.1984). The supreme cburt has explained equitable estoppel as follows:
In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done, and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of equitable estoppel is not applied except when to refuse it would be inequitable. The law does not regard estoppels with favor, nor extend them beyond the requirements of the transaction in which they originate.
Id. (quoting McLearn v. Hill, 276 Mass. 519, 177 N.E. 617 (1931)).
¶ 15. At trial, Smith admitted he knew that the balloon payment was due on May 1, 1987. His testimony indicates that he approached officials at Depositors Savings, later Eastover Bank, to inquire about refinancing the loan when the balloon payment came due. The Bank, however, informed Smith that it would not be refinancing rental property at that time. Smith stated that beginning in 1987, he approached the Bank no less than six or eight times in an effort to have the loan refinanced. The Bank did not inform Smith that the loan had matured until 1992, when he received a letter from C.E. Burnett, vice-president of loan administration, recognizing that “the loan of record was not properly coded to trigger the notification of this balloon at the proper time. We are willing to modify the loan to extend the terms subject to private mortgage insurance approval. All the other terms of the loan would remain the same.... ” The Bank made no further efforts to collect and Smith continued making his monthly payments. Smith finally discontinued his payments in 1993 upon the advice of his attorney that the Bank was barred by the applicable statute of limitations from bringing a lawsuit against him. The Bank did not seek to collect on the note until one year later.
1116. There is no evidence that the Bank relied on Smith nor that Smith sought to induce the Bank’s reliance. Smith testified that he approached the Bank several times in an attempt to refinance the loan. Despite Smith’s inquiries, the Bank failed to demand the balance due under the promissory note. Moreover, after receiving the 1992 letter, Smith again contacted the Bank to discuss possible refinancing. Though the Bank offered to refinance the loan, it failed to demand payment until one year later when Smith ceased making monthly payments. The fact that Smith approached the Bank of his own accord to discuss refinancing dispels any notion that he intentionally sought to avoid liability under the note. Moreover, EB presented nothing at trial to support its contention that in reliance upon Smith’s continued payments, it did not demand full payment or foreclose on the property. Aside from Smith, the only witness called by EB was the trustee, Frank Goodman, a former executive vice-president at Eastover Bank for Savings. Goodman could not testify as to any of the Bank’s policies or procedures regarding delinquent loans, stating “I had never heard of this file at all until it was handed to me.”
*1022 ¶ 17. The doctrine of equitable es-toppel should be applied cautiously and only when equity clearly requires it. Bright v. Michel, 242 Miss. 738, 749, 137 So.2d 155, 159 (1962). We find that the chancellor did not err in detennining that Smith was not equitably estopped from raising the statute of limitations as a defense to the action.
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., concur.

. Sunburst Mortgage Company later purchased Eastover’s assets and Smith’s loan was sold to EB. At the time of trial, EB had sold the loan to MTQL, a Louisiana limited partnership.