# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01345-SCT

*HARRISON ENTERPRISES, INC. d/b/a PAULDING CABLE COMPANY, A MISSISSIPPI CORPORATION AND ELVIN LEE HARRISON, JR.*

*v.*

*TRILOGY COMMUNICATIONS, INC., A DELAWARE CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/11/2000 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | THOMAS QUITMAN BRAME, JR. |
| | JOSEPH E. ROBERTS, JR. |
| ATTORNEYS FOR APPELLEE: | T. CALVIN WELLS |
| | CHARLES R. WILBANKS, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED-02/14/2002 |
| MOTION FOR REHEARING FILED: | 3/29/2002; denied 6/20/2002 |
| MANDATE ISSUED: | 6/27/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Trilogy Communications, Inc. (Trilogy) manufactured, sold, and delivered goods and merchandise to Harrison Enterprises, Inc. (Harrison Enterprises) on an open account status by invoices dated May, June, and July of 1995, and August of 1996. When Harrison Enterprises failed to pay, Trilogy made demand for payment, triggering discussions and negotiations regarding payment of the account. These discussions and negotiations failed to resolve the issue.

¶2. On October 28, 1998, Trilogy filed a complaint in the Rankin County Circuit Court, seeking payment of the open account naming Harrison Enterprises and Elvin Lee Harrison, Jr. (Harrison) as defendants. After discovery, Harrison Enterprises and Harrison filed a motion for judgment on the pleadings, or in the alternative summary judgment. In response, Trilogy filed its own motion for summary judgment. After a hearing on the motions, the circuit court granted summary judgment in favor of Trilogy, and denied the motion of Harrison Enterprises and Harrison.

¶3. Harrison Enterprises and Harrison timely perfected this appeal raising the following contention:

> **I. THE TRIAL COURT ERRED IN AWARDING SUMMARY JUDGMENT TO THE PLAINTIFF.**

¶4. Viewing the evidence in the light most favorable to Harrison Enterprises and Harrison, we conclude that

Trilogy is entitled to a judgment as a matter of law, and we affirm the judgment of the circuit court.

## FACTS

¶5. Trilogy began to manufacture, sell, and deliver goods to Harrison Enterprises, on an open account, in August of 1994. At the beginning of this relationship, Harrison signed a personal guarantee agreeing to be liable for the debts of Harrison Enterprises in its dealings with Trilogy. Trilogy continued doing business with Harrison Enterprises until August of 1996, at which time Harrison Enterprises owed Trilogy $71,453.75. Trilogy made several attempts to collect this outstanding debt, to no avail.

¶6. In March of 1997, Trilogy offered to work with Harrison Enterprises by renegotiating their payment schedule, requesting them to pay $2,000 a week until the debt was paid. Trilogy warned that failure to do so could result in Trilogy taking legal action.

¶7. In May of 1997, Trilogy sent a letter to Harrison Enterprises stating:

> Dear Mr. Harrison,
>
> Your account with Trilogy Communications is **SERIOUSLY DELINQUENT!!!**
>
> We have made arrangements for you to pay a set amount per month, and you have not followed through with your payments, nor have you returned the signed promissory note. We have extended your terms in order to help you out when you needed an additional 30 days. Yet we have not received any type of payment from you.
>
> At this point, unfortunately it is out of my hands. I have been instructed to give you an additional 15 days to make payment in FULL and if you do not send payment in full, you will receive a final demand letter from our attorney whereupon you will be given 30 days to pay the entire balance or he will file suit immediately.

¶8. Thirteen days later, on June 10, 1997, Harrison responded to this communication with a letter that acknowledged the account was overdue and asked Trilogy to give them until the middle of August and they would pay their account in full. After receiving the letter, Trilogy again gave Harrison Enterprises additional time to pay. However, again Harrison Enterprises failed to live up to its promise.

¶9. In early September of 1997, Harrison Enterprises' attorney contacted Trilogy's attorney and requested that Trilogy withhold filing the lawsuit as they were trying to obtain the funds to pay the account. Harrison Enterprises' attorney made a similar request in October, stating that the payment would be made by October 31, 1997.

¶10. In spite these continuing assurances, the account was never paid, forcing Trilogy to file a complaint against Harrison Enterprises and Harrison in October of 1998, seeking collection of the balance of the account, accrued interest and attorney fees. After discovery, both sides filed motions for summary judgment. After a hearing on the motions, the circuit court granted Trilogy's motion for summary judgment holding that: the statute of limitations had not run; Harrison Enterprises and Harrison had failed to assert a viable defense to the action; there was no material issue of fact; and Trilogy was entitled to a judgment as a matter of law. Later, the circuit court assessed attorney fees of $17,000, bringing the total judgment against Harrison Enterprises and Harrison to $88,453, jointly and severally. Aggrieved, Harrison Enterprises and

Harrison now appeal.

## STANDARD OF REVIEW

¶11. This Court conducts de novo review of an order granting or denying summary judgment and examines all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. *Gant v. Maness*, 786 So. 2d 401, 403 (Miss. 2001). The evidence is viewed in the light most favorable to the party against whom the motion has been made. *Id.* Consequently, summary judgment should be granted if the pleadings, discovery materials and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to summary judgment as a matter of law. *Id; Ainsworth v. Stroud*, 765 So. 2d 598, 601 (Miss. Ct. App. 2000).

## ANALYSIS

### I. THE TRIAL COURT ERRED IN AWARDING SUMMARY JUDGMENT TO THE PLAINTIFF.

#### A. Was the 6/10/97 letter sufficient to toll the statute of limitations?

¶12. All parties agree that this case deals with an open account, and thus, the three-year statute of limitation of Miss. Code Ann. § 15-1-29 (1995) is applicable. However, the parties differ as to whether the June 10, 1997, letter sent by Harrison to Trilogy was an acknowledgment of an indebtedness and a renewed promise to pay sufficient to toll the statute of limitations, as allowed by Miss. Code Ann. § 15-1-73 (1995).

¶13. This Court has long held that such acknowledgment is not sufficient if it is "vague and indefinite." *United States Fid. & Guar. Co. v Krebs*, 190 So. 2d 857, 861 (Miss. 1966) (citing *Trustees of Canton Female Acad. v. Gilman*, 55 Miss. 148 (1877)). Instead, it must "state when the balance was due, to whom the balance was due, and for what the balance was due." *Id.* It must "be both a specification of the debt referred to and a promise to pay a fixed amount in order to support a new promise." *Id.* (citing *Fletcher v. Gillan*, 62 Miss. 8 (1884)). Further, "the acknowledgment of the debt and the promise to pay must be definite and unequivocal." *Id.* (citing *Philp v. Hicks*, 112 Miss. 581, 589, 73 So. 610, 612 (1917)).

¶14. However, this Court has also held that "[s]uperficial uncertainties as to exact amounts due, resolvable by explanation, are not sufficient to impair identification of the indebtedness." *Dyer v. Lowe*, 201 Miss. 516, 521, 29 So. 2d 324, 325 (1947). Also, the requirement "when the balance was due," does not necessarily require a specific date. For example, this Court held that a letter, which had been either lost or destroyed, that reportedly said, "Inclosed [sic] I hand you $25.00, which you will credit on my note in the county treasury. I will come down some time soon, and pay you the balance of the note," was sufficient proof of a new promise to toll the statute of limitations. *Heflin v. Kinard*, 67 Miss. 522, 524, 7 So. 493, 493 (1890).

¶15. However, a "[s]imple acknowledgment of a debt on account, even in writing, is not sufficient to take the account out of the operation of the statute." *McArthur v. Acme Mech. Contractors, Inc.*, 336 So. 2d 1306, 1308 (Miss. 1976).

> The rule in Mississippi is that a partial payment does not take a case out of the operation of the running of the statute of limitations unless such partial payment is accompanied by (1) an express

acknowledgement of a further indebtedness, and (2) an express promise to pay.

*Id.* (quoting *United States Fid. & Guar. Co. v Krebs*, 190 So.2d 857, 861 (Miss. 1966)). "We, therefore, now apply the rule adopted in *Krebbs*, supra, on 'partial payment' to apply to a simple debit and credit open account." *Id.* Still, "[i]t has never been held in this state that parol evidence is inadmissible to apply the writing to its subject, and, this being done here, there is no uncertainty as to what debt was meant by the writer." *Heflin*, 67 Miss. at 525, 7 So. at 494.

¶16. At issue here is the letter addressed to Trilogy, dated June 10, 1997, on Harrison Enterprises official stationary, and signed by Harrison in his official capacity as president of Harrison Enterprises. That letter reads:

> WE REALIZE OUR ACCOUNT IS OVER DUE. IF YOU WILL GIVE US UNTIL THE MIDDLE OF AUGUST WE WILL BE ABLE TO PAY OUR ACCOUNT IN FULL.

¶17. Harrison Enterprises and Harrison contend that this letter falls short of the legal requirements of an acknowledgment of indebtedness and a promise to pay necessary to toll the running of the statute. They claim the letter does not state the amount of the balance, or when, to whom, or for what it was due. They claim it does not contain a specification of the debt, nor does it promise to pay anything at all; therefore, it is not definite and unequivocal.

¶18. Harrison Enterprises and Harrison rely on several cases to support this contention, but their reliance is misplaced since these cases are clearly distinguishable. Since 1877, the law in this area has been clear.

¶19. In *Trustees of Canton Female Acad. v. Gilman*, 55 Miss. 148 (1877), the debt was rent payments. The writing at issue read: "[i]t would suit my convenience to execute my note for the balance due for rent, payable January 1, 1877." *Id.* at 149. This Court held:

> the writing was not made with any purpose to waive a defense or save the bar of the statute. It does not *identify* the debt referred to. It mentions a balance due for rent but does not state *when*, nor *from what*, nor *to whom* the rent accrued, or what the balance was. To allow all these things to be proved by parol would produce the evil the statute requiring an acknowledgment or promise in writing to save the bar of the statute was intended to prevent.

*Id.* at 152.

¶20. In *Fletcher v. Gillan*, 62 Miss.8 (1884), the debt sued on was an open account; however, the alleged acknowledgment and promise to pay were contained in two separate writings. The two writings together read: "After the hands are paid appropriate balance due on my account to yourself." "I would like to come there and do your work, so I could pay you what I owe you." *Id.* at 11. This Court held that these two writings, even in concert, could not support a new promise, since "[t]here is neither a specification of the debt referred to, nor any promise to pay a fixed amount." *Id.*

¶21. In *Allen v. Hillman*, 69 Miss. 225, 13 So. 871 (1891), the creditor was relying on various writings from the deceased debtor to toll the statute. This Court held that:

> While the letters show an acknowledgment of indebtedness . . . they were not written to serve as an acknowledgment or promise of a debt in order to prevent the bar of the statute, and are not

sufficiently precise and definite as to debt and amount to have that effect under the established rule.

*Id.* at 225, 872.

¶22. In *Philp v. Hicks*, 112 Miss. 581, 73 So. 610 (1917), this Court was again dealing with a promissory note; however, the writing allegedly acknowledging the debt was even less definite and unequivocal:

> I received a call from atty. J. H. Thompson of this city, re a $127.00 debt which you hold against me. This acct. is a bit late in being presented, as I have been under the impression same had been paid long ago, but as I noted that the note for $75.00 has not been stamped with any cancellation stamp, same certainly must still be unpaid. As I do not want you to lose any of this amount, what will you take for a settlement in a lump sum. I will look for a reply from you within a few days and I trust that this matter will be closed up within a short while.

*Id*. at 587-88, 611. This Court held that the writing was not sufficient to toll the statute since there was "no express and definite acknowledgment of the debt, . . . [nor] an express promise to pay." *Id.* at 590, 612. In fact, the admission contained in the writing was for the purpose of procuring a compromise; it could in no way be construed as a reaffirmation of a debt. *Id*. at 589, 611.

¶23. In *Blount v. Miller*, 172 Miss. 492, 160 So. 598 (1935), this Court was dealing with an open account; but the writing offered to toll the statute of limitation was a deed of trust. It read as follows:

> Any and all sums of money or other valuable things which may hereafter, and within one year from the date of this instrument, advanced by R. G. Wilson to or for the account of the grantor or grantors herein, or any of them, shall be secured by this instrument, bear interest at the rate of eight per cent, per annum, be payable on demand unless otherwise agreed, and be collectible by sale of the property and choses in action herein assigned and conveyed as hereinbefore provided for.

*Id.* This Court rightly concluded that the language of this deed was "insufficient to withdraw the case from the operation of the statute." *Id.*

¶24. More recently, in *United States Fid. & Guar. Co. v Krebs*, 190 So. 2d 857 (Miss.1966), once again the debt at issue was a promissory note, not an open account. This Court held that the writing in question was not definite and unequivocal in its terms and merely dealt in generalities with the writer's tax difficulties rather than his obligation to pay the indebtedness. *Id.* at 862.

¶25. All of these cases are easily distinguishable from the case sub judice. In all of these cases, the writing proffered clearly failed to both acknowledge an indebtedness and include a promise to pay. In one case the writing was for the purpose of procuring a compromise. In another, the writing merely dealt with the writer's tax difficulties.

¶26. Trilogy contends that the letter is not vague and indefinite. The letter states that the debt is overdue to Trilogy and will be paid in full in August, answering the "to whom, when, and for what" requirement. It promises to pay a specified amount-in full. It is specific as to which debt it reaffirms-the only debt Harrison Enterprises owes to Trilogy. Further, Trilogy cites to the Miss. R. Civ. P. 30(b)(6) deposition of Harrison where he admits that the letter was an acknowledgment of debt and promise to pay.

¶27. We agree with Trilogy. The letter is not vague or indefinite. The letter's acknowledgment of the debt and promise to pay is definite and unequivocal. The letter was addressed to Trilogy, on Harrison Enterprises stationary, and signed by Harrison-satisfying the "to whom" requirement. It states that the debt is overdue and will be paid in August-satisfying the "when" requirement. It says OUR ACCOUNT-satisfying the "for what" requirement. Further, it is a promise to pay, specific in the amount that will be paid WE WILL BE ABLE TO PAY OUR ACCOUNT IN FULL. In his deposition, Harrison, the president of Harrison Enterprises, admitted that the letter was an acknowledgment and reaffirmation of the debt. To argue now that it was not so intended is somewhat disingenuous.

¶28. Harrison Enterprises claims that the most liberal reading "WE WILL BE ABLE TO PAY," would indicate is "a *hoped for, anticipated future ability to pay*, but not a <u>promise</u> that it would pay nor even a willingness to pay." Taken in context, this letter being a response to threatened legal action, Harrison Enterprises appears to be trying to play semantical games with this Court.

¶29. The letter is sufficient to toll the statute of limitations; therefore, this issue is without merit.

### B. Even if the letter was not sufficient to reaffirm the debt, should the common law principles of equitable estoppel apply?

¶30. Trilogy argues that even if this Court finds the letter was insufficient to reaffirm the debt, the common law principles of equitable estoppel should apply. Even though we find the letter sufficient to toll the statute, we will address Trilogy's argument.

¶31. In order to invoke this doctrine successfully, Trilogy must prove by a preponderance of the evidence that: (1) it was induced by the conduct of Harrison Enterprises or Harrison to not file its complaint sooner, (2) resulting in its claim being barred by the statute of limitations, and (3) Harrison Enterprises or Harrison knew or had reason to know that such consequences would follow. *See **PMZ Oil Co. v. Lucroy***, 449 So. 2d 201, 206 (Miss. 1984).

¶32. Equitable estoppel is an extraordinary remedy and should only be invoked to prevent unconscionable results. "The doctrine of equitable estoppel is not applied except when to refuse it would be inequitable." ***Id.; EB, Inc. v. Smith,*** 757 So. 1017, 1021 (Miss. Ct. App. 2000). "The law does not regard estoppels with favor, nor extend them beyond the requirements of the transaction in which they originate." ***Lucroy,*** 449 So.2d at 206*; **EB, Inc.,*** 757 So.2d at 1021. "The doctrine of equitable estoppel should be applied cautiously and only when equity clearly requires it. ***Bright v. Michel***, 242 Miss. 738, 749, 137 So.2d 155, 159 (1962); ***EB, Inc.***, 757 So.2d at 1022.

¶33. This Court has stated the policy behind the statute of limitations- "these acts were designed to discourage lawsuits." ***Philp v. Hicks***, 112 Miss. at 589, 73 So. at 611. "The law is created for the watchful and not for the negligent." ***Id.*** Moreover:

> The primary purpose of statutory time limitations is to compel the exercise of a right of action within a reasonable time. These statutes are founded upon the general experience of society that valid claims will be promptly pursued and not allowed to remain neglected. They are designed to suppress assertion of false and stale claims, when evidence has been lost, memories have faded, witnesses are unavailable, or facts are incapable of production because of the lapse of time.

***Miss. Dep't of Pub. Safety v. Stringer***, 748 So. 2d 662, 665 (Miss. 1999).

¶34. Harrison Enterprises and Harrison claim that all of their actions were sincere, honest and with the intention of resolving the matter. They claim that Trilogy was negligent, and in fact had received the letter six months before the statute had run, but waited ten months before filing the complaint. Conversely, Trilogy argues that Harrison Enterprises repeatedly expressed a willingness, desire, and interest to pay. Further, Harrison Enterprises had repeatedly promised to pay and had on several occasions requested that Trilogy postpone filing suit in order to give them time to do so. Trilogy claims that allowing them to hide behind the statute of limitations now would set a bad precedent and encourage others in the future to lie in order to escape their obligations.

¶35. We agree with Trilogy. The stated purpose behind the statute is to discourage lawsuits. Further, it is to reward the vigilant, not the negligent. It is to prevent false and stale claims. None of these concerns are exemplified here. Trilogy was trying to solve this problem without resorting to a lawsuit. Trilogy was vigilant in pursuing this debt, relying on the continual reassurances by Harrison Enterprises. This claim is neither false nor stale. Evidence has not been lost, memories have not faded, witnesses are available and the facts are readily capable of production.

¶36. The record clearly shows that the only reason Trilogy did not file its complaint earlier was it was induced to delay by Harrison Enterprises' promises of payment. If the letter had not effectively tolled the statute, Trilogy's cause of action would had been procedurally barred. Further, Harrison Enterprises had reason to know such consequences would follow. Thus, Trilogy has satisfied its burden of proving by a preponderance of the evidence the elements necessary to invoke the extraordinary remedy of equitable estoppel.

¶37. Although our holding that the letter effectively tolled the statute renders this issue moot, we hold that even if that was not the case, the doctrine of equitable estoppel would now bar Harrison Enterprises and Harrison from claiming the protection of the statute of limitations.

### C. When did the statute of limitations begin to run against Mr. Harrison as guarantor?

¶38. Trilogy correctly asserts that since Harrison had signed a personal guarantee, he was only secondarily liable for the debt, and therefore, the statute of limitation did not begin to run against him personally until it was clear the Harrison Enterprises was unable to pay. Trilogy points to the fact that Harrison admitted in his Rule 30(b)(6) deposition that his liability arose only if Harrison Enterprises was unable to pay. Harrison incorrectly asserts that his indebtedness arose at the same time the invoices became due; thus, his personal liability ran concurrent with that of Harrison Enterprises and is subject to the same statute of limitations.

¶39. This Court has held that a "guarantor is secondarily liable to the creditor on his contract and his liability is fixed only by the happening of the prescribed conditions at a time after the contract itself is made." *Associates Commercial Corp. v. Parker Used Trucks, Inc.*, 601 So. 2d 398, 402 (Miss. 1992) (citing *Brent v. National Bank of Commerce*, 258 So. 2d 430, 434 (Miss. 1972)).

¶40. Harrison seems to be claiming that the "prescribed conditions" that would make him primarily liable for the debts of Harrison Enterprises are the same as for the Harrison Enterprises itself, namely, the due dates of the invoices. His interpretation of the law should send chills down the spine of every guarantor in this state. Obviously, the prescribed condition that would make him personally liable is Harrison Enterprises becoming unable to pay. Since this condition could only occur after the due dates of the invoices, it is

metaphysically impossible for the statutes of limitation to run concurrently. In his deposition, Harrison admitted that he understood his personal guarantee made him secondarily liable and this liability only attached after Harrison Enterprises became unable to pay. To claim otherwise now, once again, would seem to be disingenuous at the least.

¶41. Clearly, the statute of limitations on Harrison, as personal guarantor of Harrison Enterprises, did not begin to run until at least after the date of the letter. Therefore, Trilogy's complaint against Harrison was filed well within the statute of limitations period.

## CONCLUSION

¶42. The letter sent by Mr. Harrison to Trilogy effectively tolled the statute of limitations, therefore, Trilogy's complaint was not procedurally barred. Even if the letter was not sufficient to toll the statute, Harrison Enterprises and Harrison would be equitably estopped from now claiming its protection. The statute of limitation for Harrison's personal guarantee did not begin to run until at least after the date of the letter.

¶43. Since Harrison Enterprises and Harrison had failed to assert a viable defense to the action and there was no material issue of fact, Trilogy was entitled to a judgment as a matter of law. Therefore, the trial court correctly granted summary judgment in favor of Trilogy against Harrison Enterprises and Harrison, and its judgment is affirmed.

¶44. **AFFIRMED.**

> **SMITH, P.J., WALLER AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, EASLEY AND GRAVES, JJ. PITTMAN, C.J., NOT PARTICIPATING.**

> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶45. The plurality overlooks the fact that Trilogy had to make a demand on the individual and take action before the statute of limitations ran or get him to waive the statute of limitations. Trilogy failed to get the individual guarantor to specifically agree to continue to guarantee the account after the statute of limitations had run. The statute of limitations began to run against Mr. Harrison upon Harrison Enterprises' default, not "until at least after the date of the letter." To boot, Trilogy never demanded payment from Mr. Harrison individually as guarantor. Also, there was no acknowledgment of debt and promise to pay sufficient to toll the statute of limitations; and therefore, summary judgment was improper. The lower court should have granted summary judgment to the individual guarantor. The facts bear directly on the issues and, therefore, are for a jury to decide. I would reverse and dismiss the case against Mr. Harrison as guarantor and reverse summary judgment as to Harrison Enterprises as there are facts disputed, namely whether the statute of limitations was tolled as to any and all invoices. Thus, I respectfully dissent.

¶46. We have recognized that the issue of whether a suit is barred by a statute of limitations is sometimes a question to be submitted to a jury. See *Sweeney v. Preston*, 642 So. 2d 332, 336 (Miss. 1994) and *Smith v. Sanders*, 485 So. 2d 1051, 1053 (Miss. 1986). Notwithstanding, I will address the merits of the issues.

¶47. The plurality states very generally that the statute of limitations did not begin to run against Mr. Harrison personally, as guarantor, until it was clear Harrison Enterprises was unable to pay within the

statute of limitations time period. That time, according to the plurality, was not "until at least after the date of the letter." However, this Court has made clear that the statute of limitations begins to run upon default. See ***Brent v. Nat'l Bank of Commerce of Columbus***, 258 So. 2d 430, 434 (Miss. 1972). The individual guarantor has to waive the time frame for any extension of the statute of limitations.

¶48. At the motion hearing, Trilogy's own counsel articulated that the statute of limitations for guarantors does not begin to run until the principal becomes in default. Failure to pay is undeniably default. The business relationship ceased in August 1996, at which time Harrison Enterprises, the principal, owed Trilogy over $70,000 on separate invoices. This is the time when Trilogy should have sought payment from Mr. Harrison individually. Trilogy did not have to exhaust all remedies against Harrison Enterprises before proceeding against its guarantor, Mr. Harrison. See ***Brent,*** 258 So. 2d at 434.

¶49. Also, in order to consummate Mr. Harrison's liability, Trilogy should have given notice of the default and made a clear demand that he make good on his obligation. ***Id.*** Trilogy claims to have attempted to negotiate with the *"defendants."* This is simply untrue; the "attempted negotiations" were made with Harrison Enterprises and Mr. Harrison in his official capacity as president of Harrison Enterprises. The record indicates that Trilogy never demanded that Mr. Harrison individually as guarantor pay the account. Further, Trilogy did not bring suit, or even threaten suit, against Mr. Harrison individually within the three year statute of limitations. Thus, the statute of limitations ran as to the individual guarantee of Mr. Harrison.

¶50. The plurality completely misses the boat. Mr. Harrison, as an individual, guaranteed the credit extended to Harrison Enterprises only through the statute of limitations. It is unfathomable that any guarantor would unknowingly guarantee the payment of an account or other debt beyond the time frame in which a principal is liable. In order for liability on the account to extend beyond the statute of limitations, Trilogy would have to renew or extend Mr. Harrison's obligation by having him execute a clear, concise, written statement of that intention, much like the original "Personal Guarantee" he executed. Clearly, Mr. Harrison, as an individual, did not extend his guarantee beyond the three-year statute. Even if the majority is correct as to Harrison Enterprises' liability, they are certainly wrong as to Mr. Harrison's liability as there has never been a demand for payment from him individually until the lawsuit was filed, well after his guarantee expired.

¶51. It appears that Harrison Enterprises is no longer liable on the debt either. The June 10, 1997 letter, at best, acknowledges that a debt is owed. However, it is not an acknowledgment of debt and a renewed promise to pay sufficient to toll the three-year statute of limitations. As the plurality notes, in order to toll the statute of limitations, a written acknowledgment should state when, to whom, and for what the balance was due. See ***United States Fid. & Guar. Co. v. Krebs***, 190 So. 2d 857, 862 (Miss. 1966). The who, what, and whens are not included in the letter in dispute; and therefore, the letter fails as an acknowledgment of debt and renewed promise to pay.

¶52. The plurality discounts applicable case law by distinguishing the type of debt at issue in each case and/or the writing offered to toll the statute. See ***Krebs***, 190 So. 2d at 862 (promissory note); ***Blount v. Miller***, 172 Miss. 492, 160 So. 598 (1935) (open account with deed of trust submitted as the writing that tolled the statute); ***Philip v. Hicks***, 112 Miss. 581, 73 So. 610 (1917) (promissory note); ***Allen v. Hillman***, 69 Miss. 225, 13 So. 871 (1891) (claim on an estate for payment of a mutual open account); ***Fletcher v. Gillan***, 62 Miss. 8 (1884) (open account with two writings submitted which together still did not toll the statute); ***Trustees of Canton Female Acad. v. Gilman***, 55 Miss. 148 (1877) (rent). However, in order to toll the statute of limitations, the type of debt is irrelevant. In all of the cases

mentioned, we required a written acknowledgment and promise to pay that contains clear, concise identification of the debt owed, to whom it is owed, from what the debt accrued, and when it is due. Nowhere in our case law have we used a different measure depending on the type of debt.

¶53. Applying our case law, the June 10, 1997 letter is too vague and indecisive. It was not "written to serve as an acknowledgment or promise of a debt in order to prevent the bar of the statute." *Allen*, 13 So. at 871. The precise amount to be paid is not mentioned; there is merely an acknowledgment that the "account is overdue." Moreover, the statement, "If you will give us until the middle of August we will be able to pay our account in full" is not a promise. It is vague as to when payment will be made and, more importantly, it is an indefinite, conditional statement.

¶54. I agree with Harrison Enterprises' statement that "[t]he most liberal reading that could be given the letter was that it indicated *a hoped for, anticipated future ability* to pay, but not a promise that it would pay nor even a willingness to pay." The only way the letter could satisfy all the necessary requirements would be to introduce additional documents or explanatory testimony. Further, the letter was not written with the intention of waiving defenses, namely the statute of limitations. Clearly, the letter does not meet our standards to constitute a written acknowledgment of debt and promise to pay. At best, this would be a jury issue.

¶55. Since the statute of limitations began to run at the time of default against Mr. Harrison, and since no demand was ever made of him individually for payment within the statute of limitations, he should have been dismissed and Trilogy's summary judgment against him denied. At best, when the default occurred, whether a demand was made, and thus when the statute of limitations began to run are factual issues for a jury to decide; and therefore, summary judgment should not have been granted. Accordingly, I dissent.

¶56. **DIAZ, EASLEY, AND GRAVES, JJ., JOIN THIS OPINION.**