11 GOTHARD, Judge.
|2This appeal addresses questions of the acquisitive prescription of movables, specifically, corporate stock. The plaintiff herein filed this action, individually and as a shareholder’s derivative action, for damages, declaratory judgment and permanent injunction. The defendants filed several exceptions including no cause of action and prescription. After a hearing, the trial court granted the exception of prescription and dismissed the matter. Plaintiff appeals that judgment.
FACTS
The events leading up to this law suit began in August, 1980. At that time the Articles of Incorporation for Sunshine Coffee Services, Inc. (Sunshine), a small family owned business, were filed with the Secretary of State. The original shareholders were Clyde James Phillips, Sr., his wife, Marie Norris Phillips, their son, Clyde James Phillips, Jr. and his wife, Sandra Usner Phillips, (now | oThorne) plaintiff herein. Each shareholder owned 25% or 100 shares of the 400 issued by the corporation. That ownership was evidenced by certificates of stock numbered 1 through 4. Each stock certificate states: “The transfer of this stock is prohibited except in accordance with Article XI of the Articles of Incorporation.” Article XI provides in pertinent part:
“In the event any stockholder shall desire to sell or otherwise dispose of any shares of any stock of this corporation registered in his name shall (sic) first offer such shares to the corporation in writing and the corporation shall have the right and option, for a period of ninety (90) days following the date on which said offer was received to purchase any and all of the *866 shares at the then ‘current market value’ as defined herein”. In the event the corporation fails or refuses to purchase all of the shares "within said ninety (90) day period, the other stockholders or any one of them shall have the right and option for an additional ninety (90) day period to purchase any or all of the shares not purchased by the corporation at the same price per share at which the corporation could have purchased such shares....
Subsequently, Clyde, Sr. retired, and Clyde, Jr. and Sandra were divorced. Sandra executed a document on April 9, 1984 giving her ex-husband proxy:
to vote for me at any meeting of the shareholders of SUNSHINE COFFEE SERVICE, INC., and at any adjournments:
1.) for the election of the board of directors;
2.) for or against the appointment of any such officers;
3.) and upon any such business as may be properly come (sic) before the meeting and/or adjournment.
4.) Clyde James Phillips, Jr. does hereby agree not to dilute Sandra Usner Phillips’ stock in any manner whatsoever, and she shall be entitled to and shall receive a copy of any and all financial statements of the corporation as prepared and further agrees to be held accountable for any accounting requested by Sandra Usner Phillips at any time she so desires.
UOn October 11, 1985 a document entitled “Unanimous consent of shareholders of Sunshine Coffee Service, Inc.” was executed. The document consents to the transfer of the 200 shares of stock in Sunshine owned by Clyde Phillips, Sr. and Marie Phillips, to their son Clyde, Jr. It states that the assignees to the document, “take cognizance of the provisions of Article XI of the Charter of this corporation”. That document is signed by Clyde, Sr., Marie and Clyde, Jr. Clyde, Jr. also signed the document for Sandra Us-ner Phillips by proxy.
On October 27, 1986, Clyde, Jr., as president of the corporation, executed an act of donation though which he transferred ownership of his 300 shares of stock in Sunshine to his son, Clyde, III, “in consideration of the love and affection”. On the same day Clyde, Jr. executed a document entitled, “Unanimous consent of Shareholders of Sunshine Coffee Service Inc.”, in which he consents to the transfer for himself and for his ex-wife, Sandra, by proxy. That document purports to, “take cognizance of the provisions of Article XI”.
After each transaction, the original stock certificates were cancelled and new ones issued. Thus, after the transaction of October 27, 1986, the owners of the corporation were Clyde, III, who owned 75% or 300 shares of stock, and his mother, Sandra, who still owned her original 25% or 100 shares of stock.
Sandra Usner Phillips (Thorne) filed this action on April 22, 1994 against Clyde, Sr., Marie and Clyde, III (Clyde, Jr. is deceased), asserting claims against the corporation and its former and current officers for herself, and for the corporation as a shareholder derivative action. The merits of plaintiff’s claims were never addressed because the matter was dismissed with the ruling of the trial court maintaining a defense objection of prescription.
IsAt the hearing on the exceptions, Clyde, III testified that he began working at Sunshine in 1985 when he was about 20 years old. He explained that Sunshine is a coffee service which provides restaurants and offices with coffee makers and related supplies. It was owned at the time by his parents and grandparents. He began as a route salesman. At that time the company owned two coffee routes, one serviced by his father, Clyde, Jr., and one by his grandfather, Clyde, Sr. After Clyde, Sr.’s retirement, Clyde, III took over that route.
He further testified that in 1984 his mother and father separated and subsequently divorced. As part of the divorce settlement, his father agreed to pay college tuition for his two sisters, but was not living up to that commitment.
In 1986 Clyde, Jr. expressed his intention to get out of the coffee business and pur *867 chase a bar. Clyde, III stated that he was concerned that his father would close the business, leaving Clyde, III unemployed and without the means to support his wife and son. His grandfather had already retired and his father owned 75% of the corporation. Clyde, III went to his mother and asked for her help to purchase his father’s share of the corporation. Clyde, III testified that his mother agreed to help him and tried unsuccessfully to borrow the money from a bank or from her father.
Because, Clyde, III could not find the capital necessary to buy the entire business from his father, they agreed to separate the two routes. Clyde, Jr. would sell or trade his route, for a bar, leaving the remaining route as an asset of Sunshine. Clyde, Jr. would donate his stock to Clyde, III, resulting in a smaller company owned entirely by Clyde, III and his mother, Sandra. After the donation and transfer of stock from Clyde, Jr. to Clyde, III, the latter operated the business with the one remaining coffee route until the time of trial.
| (¡Clyde, Jr. ran the bar acquired from the trade of one of the routes for about one year before encountering financial difficulties. He attempted to reestablish himself in the coffee business, but was sued by the purchaser of his route for violation of a non-competition clause contained in the contract of sale. He committed suicide in August, 1993.
Clyde, III testified that throughout the time he began working for the company in 1985 until shortly after his father’s suicide, he and his mother maintained a close relationship. She was one of his customers and he had lunch with her about once a week. For a period of time in 1990 Sandra Phillips Thorne lived with Clyde, III and his family. Clyde, III also testified that his mother was fully aware of the transfers of stock and even tried to help him acquire the stock. According to his testimony, Sandra Phillips Thorne also knew of the sale of one of the routes by Clyde, Jr. for a bar, and commented that he was an alcoholic and shouldn’t even be in a bar. He stated that after his father’s death, his mother and two sisters told him he had the business too long and now it was their turn. Consequently, his mother filed this suit in 1994.
Clyde, III is married to Karla Chauvin Phillips. Karla’s testimony substantiated that of her husband.
Sandra Phillips Thome testified that at the inception of the corporation she and her husband were co-owners along with his parents. She stated that in 1984 she and her husband began having marital troubles and she executed the proxy because she felt it might alleviate some of the tension between the parties if she were to give her husband complete control over his business. She knew of her son’s employment with Sunshine since 1985 and admitted seeing him on a weekly basis, while he was working as a route salesman. She denies any knowledge of |7the stock transfers prior to January, 1994. However, in an affidavit she states that:
Prior to the transfer of stock to Defendant Clyde James Phillips III, he approached me at work in Venice, Louisiana and told me that his father (Phillips, Jr.) intended to transfer all his stock to him in exchange for one half (½) the assets and asked for my approval and participation.
Later Phillips, Jr. approached me at my home in Harvey, Louisiana and I told him that such a transfer was illegal and that I refused to participate and that I would not sign any paperwork, Still later, Defendant Phillips told me that “its all been handled.” By “having been handled,” Defendant Phillips was referring to the attached documentation whereby the illicit transactions occurred.
When questioned about that statement in her affidavit, Ms. Thorne stated that, while she knew that her son and his father were working out a deal to transfer ownership of the corporation, she did not know the specifics of that deal.
After reviewing the evidence, both testamentary and documentary, the trial court maintained the exception of prescription. From the statements of the court in the transcript, it is apparent that the trial court found that Clyde, III acted in good faith and that Thorne knew of the transactions, and by her actions ratified the transfer of stock.
*868 In brief to this Court, plaintiff argues that the stock was not transferred by an act sufficient to transfer ownership. Her argument is based on Article XI of the corporate charter. She contends that all transfers were improper and in violation of that article since the shares to be transferred were not first offered to the corporation. She also maintains that the proxy was no longer valid since it was not for a stated term and, consequently by operation of law, expired one year from the date it was executed.
_|gShe further argues that her son was in bad faith as evidenced by illegal sales of corporate assets. The basis of this argument is the trade and/or sale of one of the coffee routes by Clyde, Jr. for a bar.
Defendants maintain that Thorne knew of and approved the transfer of the company stock from her ex-husband to her son. They state that Clyde, III has possessed the stock, in good faith, without interruption for over six years and any action brought against him now has prescribed.
Corporate stock is classified as an incorporeal movable in our law by the provisions of La.C.C. art. 473. Therefore, corporation stock is subject to the acquisitive prescriptions of three years and ten years as set out in the Louisiana Civil Code in articles 3490-91. Thornton v. Thornton Farms, Inc., 526 So.2d 315 (La.App. 3 Cir.1988). Those articles provide:
Article 3490
One who has possessed a movable as owner, in good faith, under an act sufficient to transfer ownership, and without interruption for three years, acquires ownership by prescription.
Article 3491
One who has possessed a movable as owner for ten years acquires ownership by prescription. Neither title nor good faith is required for this prescription.
Plaintiff filed this action on April 22, 1994, within the ten years, but beyond the three year period. Thus, article 3490 is applicable in our consideration and “possession in good faith, under an act sufficient to transfer ownership without interruption” of the stock is at issue. One of the comments to article 3490 states, “as to movables, the requirement of a just title is easily satisfied. There is no requirement that the title be written or recorded”.
| flClyde, III received the stock by an act of donation executed by his father, Clyde, Jr. on October 27, 1986. That act of donation is in proper form in accordance with La.C.C. article 1537 and is, therefore, an act sufficient to transfer ownership. At that time, Clyde, III was put into possession of the stock certificates and the 300 shares they represent, and has remained in uninterrupted possession since that time. Therefore, for our consideration of the prescription issue we must look to the transfer which put Clyde, III in possession, and his good faith in the acquisition.
Plaintiffs arguments concerning the original transfer from Clyde, Sr. and Marie to Clyde, Jr. in 1985 are unconvincing, since Clyde, III was not a shareholder in the corporation at that time, and did not become one until the donation in 1986. Further, plaintiff makes no allegation that Clyde, III was in anyway involved in that transfer. Plaintiffs argument in this regard fails to recognize that the issue is Clyde, Ill’s good faith belief that he was the owner, not actual valid ownership.
Thus, we turn our attention to the transfer of stock from Clyde, Jr. to his son, Clyde, III. As previously stated, that transfer was evidenced by a donation from father to son. Plaintiff argues that such a transfer was in contravention of the corporate charter which states that before any transfer of stock can be effected, the stock must be offered to the corporation, and subsequently to the other shareholders. It is undisputed that at all times plaintiff owned 25% of the stock. It is also undisputed that she gave Clyde, Jr. her proxy on April 9, 1984 for an unspecified term. Such a proxy expires by operation of law eleven months after the date of its execution. La.R.S. 12:75 C. Therefore, we believe there is some merit to the plaintiffs argument that the ratification of the transfer is lipinvalid because Clyde, Jr. used an expired proxy to sign Thorne’s name; however, that is not determinative of the issue of good faith as to Clyde, III. The issue is not *869 whether Clyde, III was the actual, valid owner of the stock, but whether he was in uninterrupted possession of the stock under an act sufficient to transfer ownership; and whether he was in good faith in believing he was the valid owner.
For purposes of prescription, good faith must be presumed. That presumption is rebutted on proof that the possessor knows or should know, that he is not the owner of the thing he possesses. La.C.C. art. 3481. We find no manifest error in the trial court’s finding that Clyde, III was in good faith possession of the stock. He is the son of the plaintiff. By her own admission, plaintiff knew of the plan to turn the business over to her son. She also knew that he was the only family member involved in the business since the transfer of stock in 1986. She admitted living with her son and his family while he was operating the one remaining coffee route. Further, testimony shows that she was, in fact, a customer of Sunshine during this time. The trial court could reasonably have found that Clyde, III was in good faith in believing that his mother knew of and ratified the transfer of stock to him.
For the foregoing reasons we affirm the trial court. All costs of this appeal are assessed to plaintiff/appellant.
AFFIRMED.