CARLTON, J.,
for the Court:
¶ 1. Bar-Til Inc. appeals the Hinds County Chancery Court’s judgment denying its claim for punitive damages. Bar-Til argues that the chancellor erred by failing to consider the bifurcated issues of bad faith and punitive damages.[1] Finding no error, we affirm the chancellor’s ruling.
FACTS
¶ 2. In January 2007, Pull-A-Part of Jackson LLC and Superior Asphalt Inc. (collectively Defendants) entered into a contract for Superior to perform work on Pull-A-Part’s property. Superior entered into a subcontract with Bar-Til and engaged Bar-Til to perform site and dirt work for the project. According to Bar-Til’s contract with Superior, Bar-Til would clear approximately 26 acres of land and strip almost 20,000 cubic yards of topsoil for $62,680. Superior later expanded the scope of Bar-Til’s work on the project for a total of $111,410. Superior sent Bar-Til a “Letter of Intent to Award,” which reflected these contract changes. Robert Cox, the project manager, signed the letter on behalf of Superior. In his findings of fact in the court below, the chancellor also noted that Superior issued Bar-Til additional work in the amount of $34,340.
¶ 3. After starting the Pull-A-Part project,. Superior discovered that certain items in the original project plan failed to consider new FEMA requirements for flood-zone elevation and that “the grades for proper drainage over the entire site were incorrect.” The original project plan required 20,000 cubic yards of dirt to be used as fill to provide proper drainage. However, Superior had since learned that a minimum of 53,000 cubic yards of dirt was needed to correct the problems. As a result, Superior authorized Bar-Til to excavate the additional 33,000 cubic yards of dirt for $74,250.
¶ 4. In July 2007, Mike Carroll replaced Cox as Superior’s project manager. On August 21, 2007, Carroll ordered Bar-Til to cease work to allow Superior to conduct a topographical survey. Bar-Til later resumed work in September 2007. In his findings of fact, the chancellor noted that, “[a]s problems developed on the project, Carroll continued to give Bar-Til oral change orders[,] and Bar-Til continued to work and submit invoices as the parties had done for the previous several months. However, Superior stopped paying invoices totaling $156,972.50.... ” The chancellor further noted that Bar-Til completed the project in December 2007, but Superior failed to pay Bar-Til for completion of the project.
¶ 5. Bar-Til filed a complaint in Hinds County Chancery Court on May 13, 2009, against the Defendants. Bar-Til asserted that Pull-A-Part was unjustly enriched as a result of Bar-Til’s unpaid work and that Superior breached the parties’ contract, breached the implied covenant of good faith and fair dealing, and breached its fiduciary duty to Bar-Til. The trial took place over the course of five different dates: June 20, 2011; June 21, 2011; November 10, 2011; February 13, 2012; and February 14, 2012.
¶ 6. On November 10, 2011, the third day of trial, Bar-Til asked to amend its complaint. Bar-Til asserted that Superi- or’s conduct constituted bad faith, and Bar-Til therefore sought to recover puni *1030 tive damages. As reflected in the record, Bar-Til sought to recover punitive damages from Superior only. The chancellor ordered the parties to brief the issue and stated that he would rule on Bar-Til’s motion to amend its complaint on February 13, 2012.
¶ 7. When trial resumed on February 13, 2012, the chancellor granted Bar-Til’s motion to amend its complaint. Immediately after granting the motion, though, the chancellor cautioned;
However, this [c]ourt is not making any determination whether or not compensatory or even punitive damages will be awarded at this point. And if the [c]ourt finds that the compensatory damages are awarded, then there will have to be a second hearing on the issue of punitive damages if the [c]ourt finds that they are meritorious.
In response to a question by one of Superi- or’s attorneys, the chancellor clarified that his ruling did not mean Bar-Til was allowed to recover punitive damages against Superior. Instead, the chancellor emphasized that Bar-Til now had “the opportunity to offer the proof of punitive damages when we decide if that’s going to be an issue.”
¶ 8. After hearing the evidence presented by the parties, the chancellor found that a valid contract existed between Superior and Bar-Til, which the parties had verbally modified on several occasions. The chancellor found that Superior breached the parties’ contract by refusing to complete payment to Bar-Til. Even without the existence of a valid contract, the chancellor found that Bar-Til would be entitled to recover the reasonable cost of the services it performed under a theory of quantum meruit.
¶ 9. As to Bar-Til’s remaining claims, the chancellor found that Bar-Til failed to prove Superior acted in bad faith or breached its fiduciary duty to Bar-Til. As a result, the chancellor denied Bar-Til’s claim for punitive damages. Upon finding that Bar-Til failed to make a sufficient showing to warrant punitive damages, the chancellor also denied Bar-Til’s claim for attorneys’ fees. In addition, the chancellor found that Bar-Til failed to prove any of its claims against Pull-A-Part, and he dismissed with prejudice all claims against Pull-A-Part.
¶ 10. The chancellor entered his final judgment on September 19, 2012. On October 5, 2012, Bar-Til filed a post-trial motion to alter or amend the judgment pursuant to Rule 59(e) of the Mississippi Rules of Civil Procedure. In the alternative, Bar-Til’s motion sought partial relief from the final judgment pursuant to Rule 60(b) of the Mississippi Rules of Civil Procedure. The chancellor fouftd that Bar-Til failed to file its motion within the ten-day time limit provided by Rule 59(e), and he therefore denied as untimely Bar-Til’s motion to alter or amend.
¶ 11. However, the chancellor also found that Bar-Til’s motion for partial relief under Rule 60(b) possessed merit. The chancellor found that, due to a mathematical error, the monetary judgment entered in favor of Bar-Til had been incorrectly stated in both his previous order and the final judgment. The chancellor therefore amended his previous order and the final judgment to reflect the total corrected sum of $171,033.20. Aggrieved by the chancellor’s ruling on the issue of punitive damages, Bar-Til now appeals to this Court.
STANDARD OF REVIEW
¶ 12. This Court “will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certain *1031 ty that the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or applied an erroneous legal standard.” Biglane v. Under the Hill Corp., 949 So.2d 9, 13-14 (¶17) (Miss. 2007). We examine the entire record and accept as true all “evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court’s findings of fact. That there may be other evidence to the contrary is irrelevant.” Par Indus. Inc. v. Target Container Co., 708 So.2d 44, 47 (¶4) (Miss.1998) (citation and internal quotation marks omitted). As to questions of law, however, we apply a de novo standard of review. Id. at (¶ 5).
¶ 13. In Faul v. Perlman, 104 So.3d 148 (Miss.Ct.App.2012), this Court recognized the following:
There are two procedural avenues to ask for reconsideration of a judgment— a Rule 59(e) motion to alter or amend a judgment or a Rule 60 motion for relief from a judgment or order. How a court treats a motion for reconsideration turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e). An appeal from a denial of a Rule 59 motion may address the merits of the entire underlying proceeding, while review of a denial of a Rule 60 motion considers only whether a judge abused the broad discretion granted by that rule.
Id. at 152 (¶ 10) (internal citations and quotation marks omitted).
DISCUSSION
¶ 14. Our caselaw provides that “[t]he award of punitive damages, along with the amount of such, are within the discretion of the trier of fact.” Hurst v. Sw. Miss. Legal Servs. Corp., 708 So.2d 1347, 1350 (¶ 6) (Miss.1998) (citation omitted). In contract cases, “[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton[,] or reckless disregard for the safety of others, or committed actual fraud.” Miss.Code Ann. § 11-l-65(l)(a) (Supp.2013). In determining the propriety of punitive damages, a chancellor “decides whether, under the totality of the circumstances and viewing the defendant’s conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard.” Ciba-Geigy Corp. v. Murphree, 653 So.2d 857, 863 (Miss.1994) (citations omitted).
¶ 15. On appeal, Bar-Til asserts that the chancellor, who sat as the trier of fact in the court below, erred when he failed to consider the bifurcated issues of Superior’s bad faith and Bar-Til’s claim for punitive damages. Because the chancellor failed to hold a second trial after awarding Bar-Til compensatory damages, Bar-Til asks this Court to reverse the chancellor’s ruling on punitive damages and to afford Bar-Til the opportunity to present its evidence on the issue of such damages.
¶ 16. In response to Bar-Til’s assertions, Superior argues that Bar-Til was in no way prevented from putting on as much evidence as it possessed regarding bad faith or punitive damages during the five days of trial held before the chancellor. Alternatively, Superior argues that Bar-Til has failed to proffer any of “the so-called excluded” evidence that would justify Bar-Til’s claim for punitive damages and that this failure provides sufficient reason for this Court to affirm the chancel *1032 lor’s denial of Bar-Til’s punitive-damages claim.[2]
¶ 17. Upon a review of the record, we find that the parties’ dispute appears to stem from their different interpretations of the following statement by the chancellor: “And if the [c]ourt finds that the compensatory damages are awarded, then there will have to be a second hearing on the issue of punitive damages if the [cjourt finds that they are meritorious.” Bar-Til claims that this statement, which the chancellor made immediately after allowing Bar-Til to amend its complaint, demonstrated the chancellor’s intent to bifurcate the issues of bad faith and punitive damages and to suspend all arguments on these issues until a second trial.
¶ 18. According to Superior, however, the chancellor’s statement in no way precluded Bar-Til from presenting evidence during the five days of trial to show that punitive damages were warranted. Superior asserts that the chancellor’s statement meant that, “if [the chancellor] found the issue of punitive damages was meritorious [during the five days of trial], then he would have a second hearing on the amount of such damages.” Superior contends that Bar-Til takes the chancellor’s statement out of context and misconstrues the chancellor’s comments.
¶ 19. We now turn to a review of the statutory law and caselaw applicable to punitive damages. In discussing whether an award of punitive damages is proper, Mississippi Code Annotated section 11 — 1— 65(l)(b)-(c) (Supp.2013) provides:
In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.
¶ 20. The Mississippi Supreme Court has also provided the following guidance:
Mississippi law does not favor punitive damages; they are considered an ex- " traordinary remedy and are allowed with caution and within narrow limits. Punitive damages should be awarded in addition to actual or compensatory damages where the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others. In other words, there must, be some element of aggression or some coloring of insult, malicef,] or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule.
... This Court has held that punitive damages are recoverable in breach of contract cases where the breach results from an intentional wrong and when there has been a showing of malice or gross/reckless disregard for the rights of others. Punitive damages are only appropriate in the most egregious cases so as to discourage similar conduct and *1033 should only be awarded in cases where the actions are extreme.
Warren v. Derivaux, 996 So.2d 729, 738 (¶¶ 27-28) (Miss.2008) (internal citations and quotation marks omitted).
¶21. As our precedent reflects, some underlying basis, such as actual malice or fraud, must exist for an award of punitive damages before a chancellor will hold a second hearing on the issue of such damages. See Miss.Code Ann. § 11-1-65(1) (Supp.2013). In the present ease, the chancellor found no merit to Bar-Til’s claim that Superior’s conduct justified an award of punitive damages. As reflected in his order and final judgment, the chancellor found that Bar-Til failed to provide the requisite evidentiary basis to support an award of punitive damages.[3]
¶22. The chancellor found that, although Bar-Til showed Superior breached the parties’ contract, no evidence existed of “dishonest purpose.or moral obliquity.” While the chancellor found Superior’s contention that Bar-Til received full payment to be legally inaccurate, he also determined that the claim was not unreasonable. Therefore, the chancellor found that the proof failed to establish that Superior acted in bad faith.
¶ 23. As the record reflects, the chancellor’s findings demonstrated that he properly concluded that an award of punitive damages must be supported by a requisite evidentiary basis showing intentional, malicious, or wanton conduct by clear and convincing evidence.[4] Based on the record and relevant caselaw, we find no abuse of discretion by the chancellor’s de-cisión not to hold a second trial on the issue of punitive damages. See Hurst, 708 So.2d at 1350 (¶ 6). Therefore, this argument lacks merit.
¶ 24. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Bar-Til also asserts that the chancellor had the power to award punitive damages in this matter. However, as the Defendants point out in their briefs, not only did the chancellor find that he possessed the authority to award punitive damages if the evidence warranted, but also the Defendants do not dispute the chancellor's authority to award such damages.

. See Granger v. State, 853 So.2d 830, 833 (¶ 9) (Miss.Ct.App.2003) ("[A] party who wishes to preserve an issue for appeal must make a proffer. Generally, when a party seeks to offer evidence which in turn is ex- ' eluded by the trial court, before we will consider the matter on appeal[,] the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration.” (citation and internal quotation marks omitted)).

. See Hamilton v. Hopkins, 834 So.2d 695, 703 (¶ 26) (Miss.2003) (“To qualify for punitive damages in a breach of contract case, a plaintiff must prove by a preponderance that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights.” (citations omitted)); Ciba-Geigy Corp., 653 So.2d at 863 (finding "no evidence of any intentional, malicious!,] or wanton conduct to justify an award of punitive damages”).

. See Hamilton, 834 So.2d at 703 (¶ 26); Ciba-Geigy Corp., 653 So.2d at 863.