**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2016-CA-00064-COA**

| | |
|---|---|
| **KNIGHTS MARINE & INDUSTRIAL SERVICES, INC.** | **APPELLANT/CROSS-APPELLEE** |
| **v.** | |
| **GULFSTREAM ENTERPRISES, INC.** | **APPELLEE/CROSS-APPELLANT** |

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2015 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | KEVIN M. MELCHI |
| | JOHN MAJOR KINARD |
| | ANDY LOWRY |
| ATTORNEY FOR APPELLEE: | STEPHEN WALKER BURROW |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | JUDGMENT FOR THE APPELLEE IN THE AMOUNT OF $143,881.01; PRE-JUDGMENT INTEREST TOTALING $10,122.92; POST-JUDGMENT INTEREST OF EIGHT PERCENT PER ANNUM; ATTORNEY'S FEES AND EXPENSES TOTALING $9,274.74 |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 04/18/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND FAIR, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.     This dispute stems from the clean-up efforts on the Mississippi Gulf Coast due to the

Deep Water Horizon BP oil spill in 2010.  Gulfstream Enterprises Inc. (Gulfstream) sued

Knights Marine & Industrial Services Inc. (Knights) under the open-account statute in the

County Court of Jackson County, alleging Knights failed to pay the full balance owed to Gulfstream for providing a crew-transport vessel with a captain and crew. Gulfstream later amended its complaint to add a breach-of-contract claim. After a bench trial, the county court entered: (1) a judgment in favor of Gulfstream for $143,881.01 in compensatory damages; (2) pre-judgment interest of eight percent per annum from the date Gulfstream filed its original complaint through the entry of judgment, totaling $10,122.92; (3) post-judgment interest of eight percent per annum; and (4) attorney's fees and expenses totaling $9,274.74; for a total judgment of $163,278.67. Gulfstream's request for punitive damages was denied.

¶2. Knights appealed to the Jackson County Circuit Court, and Gulfstream cross-appealed on the issues of pre-judgment interest, punitive damages, and Knights's garnished funds to secure judgment. The circuit court affirmed the county court's judgment in all respects.

¶3. Knights now appeals to this Court, and Gulfstream cross-appeals. Gulfstream claims the county court should have awarded pre-judgment interest starting on the date Knights failed to pay Gulfstream's outstanding invoices, not the date Gulfstream filed suit. Gulfstream also argues the county court erred in not awarding punitive damages, and in ordering Knights's funds, which had been successfully garnished by Gulfstream, to be deposited in the court registry instead of immediately disbursed to Gulfstream. A request for attorney's fees for the appeal and post-judgment collection efforts was made by Gulfstream as well.

2

¶4. On direct appeal, we affirm the $143,881.01 award to Gulfstream under the open-account statute. On cross-appeal, we affirm the denial of punitive damages to Gulfstream, but reverse and remand for the circuit court to determine the amount of pre-judgment interest and Gulfstream's fees related to post-judgment-collection efforts and defending this appeal.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶5. As part of the clean-up efforts from the Deep Water Horizon oil spill, BP retained the services of numerous contractors, including United States Environmental Services LLC (USES). On May 31, 2010, USES contracted with Knights[1] to "provide barges and tugboats, per the direction of USES," and "[s]upply, install and maintain ocean barrier fencing as directed by USES." In late June or early July 2010, Knights contacted Gulfstream about hiring a crew-transport vessel with a captain and crew, in order to fulfill its contract with USES. An agreement was reached between Gulfstream and Knights, and on July 8, 2010, Knights issued a purchase order stating Gulfstream would "provide a 42-foot crew transport vessel jet boat with captain and deckhand not including fuel" in order to "transport personnel [and supplies] from Biloxi to any of the barrier islands" at the rate of $2,400 per day.

¶6. From July 8, 2010, until December 4, 2010, Gulfstream claimed the vessel was available to provide whatever support or services USES needed. Gulfstream admitted that sometimes the vessel was on standby and not working, as either it was awaiting directions

---

[1] Knights was a contractor under USES tasked with numerous jobs, including supplying personnel and materials for the clean-up efforts. Knights had approximately three subcontractors working for it.

from USES or there were unsafe marine conditions. The vessel's activity was recorded daily in the captain's logs. However, starting on September 30, 2010, Knights claimed Gulfstream's vessel was not in operation at all but had been removed to a staging area for repairs and maintenance. The captain's logs do not provide any details about the vessel's activities from September 30 through December 5, 2010. Yet it is undisputed that Gulfstream invoiced Knights weekly for services, fuel, and other charges, whether the vessel was on standby or working. Knights, in turn, submitted a weekly invoice to USES for payment, charging USES $2,900 per day for the vessel, or a $500 markup from the amount Gulfstream billed Knights.[2]

¶7.     Gulfstream pointed out that during this time, the vessel could not be used for any other job or purpose, and it never was. Ultimately, Gulfstream contended Knights owed an

_____

[2] Knights contends its billing arrangement and history with USES is not pertinent to the merits of this case, but we find its understanding necessary to show the circumstances surrounding Gulfstream's unpaid invoices. The record indicates USES paid Knights a total of $2,648,903.87 for all of the services contracted by Knights for the oil-spill-clean-up efforts, which would include Gulfstream's charges, and USES paid Knights all but approximately $20,000 of the charges. However, Knights claimed it received less than it was entitled to from USES. In total, Knights invoiced USES approximately $4.7 million for work on the oil spill from its subcontractors, but Knights explained that it had to take cuts in payments owed from USES because BP was auditing and delaying payments to USES, which subsequently delayed and decreased payments to Knights. Also, some funds were retained by USES from payments Knights received, which USES explained was a customary billing practice for large oil spills. USES asked Knights to discount its bills for the project, and Knights asked its subcontractors to do the same. Knights stated that all of its contractors were taking a significant reduction off their initial invoices. In July 2012, Knights requested that Gulfstream take a twenty-percent reduction in the total amount invoiced because of compromises it made with USES to finalize payments to Knights and Gulfstream. Gulfstream refused. The parties eventually agreed that Knights would pay Gulfstream $129,492.92, but Gulfstream requested it be paid within ten days, and Knights refused to do so.

outstanding balance of $143,881.01[3] for services provided. Gulfstream made several requests to Knights for payment both verbally and in writing, but the balance remained unpaid. Knights contended that it only owed payment for those days where service was requested by Knights or USES, and actually performed by Gulfstream.

¶8.     On July 23, 2013, Gulfstream sued Knights under the open-account statute of Mississippi Code Annotated section 11-53-81 (Rev. 2012), and later amended the complaint to include a breach-of-contract claim. The parties waived their right to a jury trial. Testifying at the one-day bench trial in the Jackson County County Court were Greg Ladnier, president of Gulfstream; Will Ladnier, Greg's brother and boat captain; David Knight, Knights's chief financial officer and fifty-percent shareholder; and Eric Hoffman, chief financial officer of USES.[4] The court entered judgment for Gulfstream on compensatory damages of $143,881.01 under the open-account statute. Pre-judgment interest and attorney's fees were also awarded to Gulfstream, but punitive damages were denied.

¶9.     After the judgment was entered, Gulfstream tried to collect its judgment. An agreed order allowed Knights additional time to appeal to the circuit court and post a supersedeas bond. A stay was entered upon execution of the judgment, and bond was set at 125% of the total judgment, or $204,098.34. After the stay expired, Gulfstream filed petitions for writ

---

[3] Gulfstream invoiced Knights a total of $396,654.86 for the vessel rental, fuel, and other various charges. Knights paid Gulfstream a total of $252,782.85, leaving an unpaid balance of $143,881.01.

[4] Hoffman testified by deposition as USES's Mississippi Rule of Civil Procedure 30(b)(6) representative.

of garnishment to several financial institutions in Jackson County to secure the judgment. All funds garnished from Knights's bank accounts were tendered to the registry of the Jackson County Circuit Court. The court ordered that once cash reached 125% of the judgment, the funds served as a supersedeas bond and stayed the judgment. Gulfstream filed a motion to disburse these funds, but it was denied.

¶10. Knights appealed, and Gulfstream cross-appealed to the Jackson County Circuit Court, which affirmed the county court's rulings. Appeal and cross-appeal were then taken to this Court.

## ANALYSIS

### I. Damages Under the Open-Account Statute

¶11. Knights argues that the county court erred in awarding $143,881.01 in compensatory damages to Gulfstream under the open-account statute because there were no services rendered for some of the invoices submitted, and Gulfstream was never entitled to a "standby rate" for the vessel. We disagree, and find sufficient evidence for the county court's award of compensatory damages.

¶12. The county court is the finder of fact, and both the circuit court and this Court are bound by the county court's judgment if supported by substantial evidence and not manifestly wrong. *CEF Enters. Inc. v. Betts*, 838 So. 2d 999, 1002 (¶10) (Miss. Ct. App. 2003) (citations omitted). Moreover, "[a] judge sitting without a jury has sole authority for determining credibility of the witnesses." *Byrd Bros. LLC v. Herring*, 861 So. 2d 1070, 1073 (¶14) (Miss. Ct. App. 2003) (quoting *Rice Researchers Inc. v. Hiter*, 512 So. 2d 1259,

6

1265 (Miss. 1987)).

¶13.    There is no dispute that the relationship between Knights and Gulfstream involved an open account under section 11-53-81.  An open account is generally "an account based on continuing transactions between the parties which have not been closed or settled but are kept open in anticipation of further transactions." *Mauldin Co. v. Lee Tractor Co. of Miss.*, 920 So. 2d 513, 515 (¶9) (Miss. Ct. App. 2006) (quoting *Westinghouse Credit Corp. v. Moore & McCalib Inc.*, 361 So. 2d 990, 992 (Miss. 1978)).  "[A]n open account must contain a 'final and certain agreement on price.'" *Douglas Parker Elec. Inc. v. Miss. Design & Dev. Corp.*, 949 So. 2d 874, 877 (¶8) (Miss. Ct. App. 2007) (quoting *McLain v. W. Side Bone & Joint Ctr.*, 656 So. 2d 119, 123 (Miss. 1995)).  Our supreme court has recognized that "a collection for recovery, on an open account, amounts to a collection action where the debt is based on a series of credit transactions." *Franklin Collection Serv. Inc. v. Stewart*, 863 So. 2d 925, 930 (¶14) (Miss. 2003).  In an open-account action, the date of purchase, the kind of goods, the quantity, and the price must be shown. *Motive Parts Warehouse Inc. v. D&H Auto Parts Co.*, 464 So. 2d 1162, 1165 (Miss. 1985) (citation omitted).

¶14.    Knights argues that in order for it to owe Gulfstream under the open account, there must have been work performed as part of a series of transactions between the parties. Knights contends that Gulfstream provided no evidence of any work performed by the vessel or any expenses incurred from September 30 through December 5, 2010.  Moreover, Knights claims there was no contract or "standby rate," but merely a purchase order indicating the $2,400-per-day rate.  David Knight testified even if there were a standby rate,

7

it would generally be one-third to one-half the daily rate. Knights contends Gulfstream's invoices are fraudulent because Gulfstream cannot show it worked during this time-frame.[5]

¶15.   Undisputably, Will testified that there were "definitely standby days" when the weather was unsafe, or the boat needed maintenance. However, he claimed the standby rate was the same as the day rate, because Gulfstream could not use the boat for any other job – it had to be ready to work for USES. Greg also affirmed this point, but admitted that there was nothing in writing about a "standby rate" – it was just a "default understanding."

¶16.   The daily captain's logs entered into evidence also show periods of time when the vessel was not actively working on the cleanup project. From July 2010 until the end of September 2010, Gulfstream's daily logs are very detailed about the vessel's numerous activities. However, from September 30 to October 9, 2010, the log shows "foul weather" and "preventative maintenance was performed during downtime." During this period Will testified that the boat was in dry storage being sandblasted but claimed the vessel could be back in the water in less than an hour for use. Will stated that Gulfstream coordinated with USES's schedule to make sure its maintenance did not interfere with any possible work – when USES put Gulfstream on standby, Gulfstream would do the maintenance, so it "never missed a lick."

¶17.   Will testified that from October 31 through December 5, 2010, Gulfstream was not performing any tasks for USES, but was on standby status. During this period, the daily captain's logs had the same entry: "continued support" for transporting supplies to the

_____

[5] Knights did not raise fraud as an affirmative defense under Mississippi Rule of Civil Procedure Rule 8(c).

various barrier islands. Gulfstream contends it was obligated to have the vessel available should USES need it; thus, the vessel was not available for any other entity, and Gulfstream was owed payment for these days. Gulfstream further claimed the vessel was always available seven days a week for twelve hours per day for USES. However, Knights argues that this availability was merely a business decision on Gulfstream's part. Yet neither USES nor Knights had any complaints about Gulfstream's performance or availability on the project.

¶18. As the circuit court noted, whether or not Gulfstream performed the work is a question for the fact-finder (here the county court), and does not change the legal status of the relationship. Gulfstream's invoices to Knights do not specify a standby rate or any exclusions.[6] We agree. Gulfstream presented substantial evidence that it was hired to provide a vessel whether work was performed or not, and it could not perform work for another entity while obligated to USES's projects. Moreover, Knights's equipment-rental worksheets, provided to USES, showed the "eight-hour day rate" was the same as the "standby rate" – $2,900. Greg testified the boat was available, whether in service or on

_____

[6] Knights supplemented its authority after oral argument under Mississippi Rule of Appellate Procedure 28(k), citing *Stanton & Associates Inc. v. Bryant Construction Co.*, 464 So. 2d 499, 503 (Miss. 1985), for the proposition that unless there is a price agreement between the parties, the claim for funds is unliquidated and does not meet the itemization standards to qualify as an open account. Applied to this case, Knights suggests that because there was no price understanding for a standby rate, as there was for the daily rate, there was no "meeting of the minds" and thus no open account for standby charges. Yet Knights also maintains that USES never authorized a standby rate for Gulfstream. We find *Stanton* distinguishable; in that case, it was undisputed that there was never a price agreement, unlike here, where the daily rate of $2,400 was agreed upon by both parties for providing the vessel.

standby, for approximately 150 days, for no more than twelve hours per day. At oral argument, Gulfstream's counsel likened the usage of the vessel to a lease. Further, the evidence on the captain's logs was not clear as to which days were worked, but regardless, Gulfstream was hired to provide a vessel with a crew, not to perform tasks.

¶19. Based upon the evidence, we cannot say the county court abused its discretion in awarding Gulfstream compensatory damages of $143,881.01.

CROSS-APPEAL

## II.    Pre-Judgment Interest

¶20. The county court awarded Gulfstream $10,122.92 in pre-judgment interest, at eight percent per annum. Gulfstream argues that the county court erred in calculating the interest from the date Gulfstream filed its complaint, instead of the date Knights breached the unwritten contract. It also claims that the circuit court erred in finding the claim was not liquidated before judgment. We affirm the county court's award of pre-judgment interest to Gulfstream, but remand for its computation from the date Knights failed to pay the purchase-order invoices.

¶21.    Interest on judgments is governed by Mississippi Code Annotated section 75-17-7 (Rev. 2016):

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

Open accounts are a form of contract. "Suits on open account[s] are always contractual

10

matters, because an underlying contract must exist for the open account to exist. . . . '[A]n open account is an unwritten contract.'" *Lyons & Assocs. P.A. v. v. Precious T. Martin Sr. & Assocs. PLLC*, 87 So. 3d 444, 453-54 (¶33) (Miss. 2012) (quoting *McArthur v. Acme Mech. Contractors Inc.*, 336 So. 2d 1306, 1308 (Miss. 1976)). An award of pre-judgment interest is not rationally made "where the principal amount has not been fixed prior to judgment." *Stanton & Assoc. Inc. v. Bryant Constr. Co.*, 464 So. 2d 499, 504 (Miss. 1985).

¶22. Here, the parties were operating under an open account, a type of unwritten contract; thus, Gulfstream should be granted pre-judgment interest if Knights's debt was liquidated. We disagree with the circuit court's finding that it was not. A debt is liquidated when it is "agreed on by the parties, readily determinable or fixed by operation of the law." Johnny C. Parker, *Mississippi Law of Damages* § 4:1 (3d ed. 2014) (citing *Woodmansee v. Garrett*, 247 Miss. 148, 153 So. 2d 812 (1963)). The invoices and financial documents entered into evidence all indicate Knights's liability as $143,881.01– the disputed issue is whether the amount was owed at all. This situation is similar to *T.C.B. Construction Co. v. W.C. Fore Trucking Inc.*, 134 So. 3d 701, 705 (¶13) (Miss. 2013), where unpaid invoices – not the amount of the unpaid invoices – constituted the liability for breach of contract, and were thus considered liquidated. In *T.C.B.*, Fore Trucking entered into a contract with T.C.B. to remove debris north of Highway 53 after Hurricane Katrina. *Id.* at 702-03 (¶2). Later, T.C.B. performed debris removal south of Highway 53 as well at the request of Fore's principal, but Fore refused to pay, as this work "was not contemplated by the contract." *Id.* at 703 (¶4). Evidence surfaced that Fore had submitted T.C.B.'s invoices to Harrison

11

County and been paid in full for all debris removal – at a total of $12.3 million. *Id.* After a jury trial, T.C.B. was awarded compensatory damages, but the circuit court awarded prejudgment interest from the date the complaint was filed. *Id.* at (¶6). This Court reversed on that issue, awarding interest from the date of breach, and the Mississippi Supreme Court affirmed us in that regard. *Id.* at (¶7), 706 (¶15).

¶23. In the instant case, the same principles apply. We affirm the grant of pre-judgment interest, but reverse as to the date pre-judgment interest begins and remand to the circuit court for a calculation of pre-judgment interest from the date the breach occurred.

### III. Punitive Damages

¶24. Gulfstream argues that the county court's denial of punitive damages was error because Knights deliberately delayed or withheld payment from Gulfstream; specifically, Gulfstream contends that Knights's conduct was malicious because it withheld a percentage of payments from Gulfstream's invoices, even though USES had paid Knights the full amount. In 2012, Knights requested Gulfstream take a ten-to-twenty-percent discount from the balance owed because BP did not pay USES all of the retainer being held; thus, USES and Knights did not receive full payment for the invoices.

¶25. An award of punitive damages is within the discretion of the trier of fact. *Bar-Til Inc. v. Superior Asphalt Inc.*, 164 So. 3d 1028, 1031 (¶14) (Miss. Ct. App. 2014).

> An award of punitive damages is an extraordinary remedy, reserved for the most egregious cases, and designed to discourage similar misconduct. In a breach of contract case, the plaintiff "must prove that the breach was the result of an intentional wrong or that a defendant acted maliciously or with reckless disregard of the plaintiff's rights."

12

*T.C.B.*, 134 So. 3d at 704 (¶9) (internal and end citations omitted). In determining whether punitive damages are appropriate, the judge "decides whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard." *Bar-Til*, 164 So. 3d at 1031 (¶14) (quoting *Ciba-Geigy Corp. v. Murphree*, 653 So. 2d 857, 863 (Miss. 1994)).

¶26. Here, the trier of fact was the county-court judge, who denied punitive damages. The circuit court, in affirming the county court, cited *Dynasteel Corp. v. Aztec Industries Inc.*, 611 So. 2d 977, 985 (Miss. 1992), for the proposition that in open-account cases, it would be rare to find the "intentional wrong, insult, abuse, or such gross negligence," as could be found in a traditional breach-of-contract case. In that case, the Mississippi Supreme Court said:

> [M]ore often than not the failure to pay has more to do with inability to do so rather than obstinance. We have been unable to find any precedent for an award of punitive damages on an open account case. It would be the rarest of occasions that such an award would be proper.

*Id.*

¶27. The county court's denial of punitive damages was proper. The trier of fact could easily have found that Knights did not act with a sufficient level of malice to warrant them. Knights paid Gulfstream $252,782.85 of the $396,654.86 Gulfstream billed. Knights was taking a reduction in funds received from USES because USES was taking a reduction from BP, not to mention the delay in payments due to BP's auditing procedure. The record indicates Knights attempted to negotiate a settlement with Gulfstream starting in July 2012

13

through April 2013, and was nearly successful until Gulfstream insisted the offer of $129,492.92 be paid within ten days. We cannot find that the county court erred in denying punitive damages.

## IV.     Garnishments and Supersedeas Bond

¶28.    Gulfstream argues that the county court erred in ordering Knights's funds, successfully garnished by Gulfstream, to be deposited in the court registry in lieu of Knights's posting a supersedeas bond, and also in later denying the funds' disbursement to Gulfstream.

> [T]he general purpose of the supersedeas bond is to effect absolute security to the party affected by the appeal. . . .  The amount of a supersedeas bond should be sufficient to protect the appellee in his judgment. . . .  The bond is the typical means of giving the appellee security. *However, the [c]ourt may approve security in the form of cash or property*.

*Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 524 (¶91) (Miss. 2007) (emphasis added) (citation omitted). The supersedeas bond should be in the amount of 125% of the judgment. M.R.A.P. 8(a); URCCC 5.08. To stay the execution of judgment, "[t]he court shall require the giving of security by the appellant in such form and in such sum as the court deems proper . . . ." M.R.A.P. 8(b)(1). "The trial court . . . may approve security in the form of a cash or property bond." M.R.A.P. 8 cmt. The standard of review regarding the posting of a supersedeas bond is abuse of discretion.[7] Section 11-35-23(1) of the Mississippi Code

[7] Professor Jeffrey Jackson's treatise, *Mississippi Civil Procedure*, states:

Although the Mississippi Supreme Court has yet to address the particular standard of review applicable to a trial court's ruling on the posting of a supersedeas bond, several other states have addressed the issue. These courts have generally held that "the standard for reviewing the sufficiency of a

14

Annotated (Rev. 2004) provides that "any indebtedness of the garnishee to the defendant, except for wages . . . , shall be bound from the time of the service of the writ of garnishment, and be appropriable to the satisfaction of the judgment or decree . . . ." In a letter opinion issued in 1992, the Mississippi Attorney General advised that "all garnishment monies should be paid into the court before they are disbursed to the judgment creditor." Miss. Att'y Gen. Op., 1992 WL 613986, *Tate* (June 3, 1992).[8]

¶29.    On July 10, 2014, the county court ordered a stay of execution on the judgment until July 16, 2014. Knights had not posted a supersedeas bond by that date, and Gulfstream began garnishing Knights's assets at numerous financial institutions, which successfully yielded $205,813.07. On July 22, 2014, the county court ordered the attached funds to be deposited in the Jackson County Circuit Court registry to replace the bond requirement, which was $204,098.34.[9] On August 12, 2014, Gulfstream moved the court to disburse Knights funds from the registry, but it was denied.

¶30.    It is undisputed that Knights never obtained a supersedeas bond. However, here, the

---

supersedeas bond is abuse of discretion."

2 Jeffrey Jackson et al., *Mississippi Civil Procedure* § 19:26 (2016) (discussing Mississippi Rule of Civil Procedure 62 stay of proceedings to enforce a judgment).

[8] This opinion is in accord with the statute as section 11-35-23(5) provides that "[t]he circuit clerk may, in his or her discretion, spread on the minutes of the county or circuit court, as the case may be, an instruction that all garnishment defendants shall send all garnishment monies to the attorney of record[.]" Here, there is no indication that the clerk had entered such an instruction.

[9] The county court specifically stated: "Once cash or checks have been tendered to the Circuit Clerk totaling 125% of the judgment (presently $204,098.34), those funds shall act as a supersedeas bond until further order of this Court."

county court's requiring the garnished funds be deposited in the court registry had the same effect as a supersedeas bond – to provide absolute security to Gulfstream. The amount deposited was approximately $1,700 more than the 125%-of-the-judgment bond requirement. As the circuit court and Knights remarked, Gulfstream is probably more secure with the cash deposit than the bond. Additionally, Rule 8(b) allows the court to create judgment security "in such a form and in such a sum as the court deems proper." The garnishment statute allows for garnished funds to be used to satisfy a judgment under court order. Therefore, we cannot find the county court abused its discretion in ordering the funds be deposited in the court registry in lieu of a supersedeas bond, or denying immediate disbursement of these funds.

## V.     Post-Judgment Attorney's Fees

¶31.    Gulfstream requests attorney's fees and costs for its post-judgment collection efforts and this appeal. Under the open-account statute, a defendant "shall be liable for reasonable attorney's fees to be set by the judge for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the plaintiff." Miss. Code Ann. § 11-53-81. We find it reasonable to award Gulfstream its attorney's fees for post-judgment collection efforts that resulted in the garnishments. Further, we find that Gulfstream's attorney's fees in defending the appeal would be proper under the statute; our usual practice in such instances is to award fees equal to "one-half of what was awarded in the trial court." *See Bailey v. Chamblee*, 192 So. 3d 1078, 1083 (¶16) (Miss. Ct. App. 2016) (citation omitted). We grant one-half of the attorney's fees and expenses awarded to Gulfstream by the circuit

16

court, and remand to the circuit court for a calculation of those fees and of the attorney's fees for post-judgment collection efforts.

¶32.    **THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPELLEE/CROSS-APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**