IRVING, J.,
for the Court.
¶ 1. This appeal arises out of a suit filed by Douglas Parker Electric, Inc. (Parker) against Mississippi Design and Development Corp. (MD & D). The Harrison County Circuit Court granted MD & D’s motion for summary judgment. Aggrieved, Parker appeals and asserts that the court erred in finding that the relationship between Parker and MD & D was one based on a contract rather than on an open account, in finding that no genuine issues of material fact exist, and in finding that the statute of limitations had run on Parker’s claims.
*876 ¶ 2. Finding error, we reverse and remand for further proceedings consistent with this opinion.
FACTS
¶ 3. MD & D hired Parker to do electrical work on the Monte Carlo Casino barge, which was owned by Allen Paulson. Paul-son had hired MD & D to repair the barge after it was damaged in Hurricane Georges. At some point, MD & D indicated to Parker that it was necessary to pump water out of the barge to keep the barge from sinking. Parker offered to do the work. MD & D did not tell Parker not to do the work, but did inform Parker that it would not be paid immediately. Parker and MD & D dispute when Parker was to be paid, if at all. MD & D claims that it told Parker that it could do the work, and MD & D would submit the invoices for the work to the insurance company. MD & D maintains that it told Parker it would be paid only if the insurance company decided to pay for the work. Otherwise, according to MD & D, the understanding was that Parker would not be paid. By contrast, Parker maintains that it was told that it would be paid from the proceeds of the sale of the barge.
¶ 4. Parker completed pumping the water from the barge in late September 2000. Parker maintains that after it submitted its invoices, totaling $126,850, it kept in touch with MD & D regarding the sale of the barge, and MD & D continually reassured Parker that it would pay Parker when the barge was sold. In July 2003, MD & D informed Parker that the barge had been sold, and MD & D had been paid what was owed to it in real property, instead of being paid in cash. According to Parker, MD & D told Parker at that time that it would not be paid for the work. On July 21, 2003, Parker’s attorneys mailed MD & D a demand letter for payment, to which MD & D apparently never responded. On September 23, 2003, Parker filed suit to collect against MD & D.
¶ 5. MD & D claims that it submitted the invoices to the insurance company, as it had promised to do, although MD & D also claims that it informed Parker that the amount of the invoices were very high and that it doubted the insurance company would pay such a large amount. MD & D maintains that the insurance company refused to pay the invoices and, pursuant to its agreement with Parker, MD & D refused to pay Parker for its work. MD & D also claims that the work claimed on the invoices was not actually done.
¶ 6. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Open Account

¶ 7. In its first contention of error, Parker claims that the trial court erred in ruling that its agreement with MD & D was in the nature of an oral contract rather than an open account.[1]
¶ 8. We find that the court did not err in characterizing the agreement between Parker and MD & D as an oral contract rather than an open account. The Mississippi Supreme Court has defined an “open account” as “an account based on continuing transactions between the parties which have not closed or been settled.” Franklin Collection Serv. v. Stewart, 863 So.2d *877 925, 930(¶ 14) (Miss.2003) (citing Westinghouse Credit Corp. v. Moore & McCalib, Inc., 361 So.2d 990, 992 (Miss.1978)). In McLain v. W. Side Bone & Joint Ctr., 656 So.2d 119, 123 (Miss.1995) (citations omitted), the Mississippi Supreme Court noted that an open account must contain a “final and certain agreement on price.” In Motive Parts Warehouse, Inc. v. D & H Auto Parts Co., 464 So.2d 1162, 1166 (Miss.1985) (quoting 1 Am.Jur.2d Accounts and Accounting § 4), the Mississippi Supreme Court noted that an open account “results where the parties intend that ... the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made, until it shall suit the convenience of either party to settle and close the account....”
¶ 9. Here, there is scant evidence to indicate that there was any discussion of the price of Parker’s services, let alone a “final and certain agreement on price.” Rather, it seems that the assumption was that the work would be done at Parker’s standard rate that it had been charging MD & D for Parker’s other work. Furthermore, there was no running balance of credits and debits, nor was payment due at the convenience of either party. Instead, Parker understood that it would be paid when the barge was sold. Given the facts of this case, the court did not err in finding that the agreement between the parties was in the nature of an oral contract rather than an open account.

2. Summary Judgment

¶ 10. Parker claims that there are genuine issues of material fact sufficient to overcome summary judgment. After reviewing the record, we agree.
¶ 11. We apply a “de novo standard of review when examining a trial court’s grant or denial of summary judgment.” Flores v. Elmer, 938 So.2d 824, 826(¶ 7) (Miss.2006). We review the evidence in the light most favorable to Parker, the non-moving party. Id. “All that is needed for [Parker] to survive a motion for summary judgment is to demonstrate that a genuine issue of material fact exists.” Id. (citations omitted).
¶ 12. In entering summary judgment against Parker, the court appears to have simply adopted MD & D’s account of events as true and ignored Parker’s version of events. The affidavit submitted by Charles Parker, II, who gave the affidavit as an officer and shareholder of Parker, states:
In February, 1999, MD & D asked me if I would inspect the hull and pump the water from the hull of the Monte Carlo Casino barge accumulated after Hurricane Georges in September, 1998 to keep the Barge afloat. I informed MD & D that I was able to perform such work, but that it would require many hours of labor and many men to assist me. MD & D informed me that the work had to be completed prior to the sale of the Barge, and that I would be paid from the proceeds of the sale.
[[Image here]]
After having completed all the work that I was hired to do, I submitted the invoices. I was told by MD & D that the sale of the Barge was then pending, and that I would be paid as soon as it was sold. At no time was there ever an agreement that insurance proceeds would pay for my services. At all times herein, the agreement was that I would be paid as soon as the Barge was sold. I attempted to contact MD & D numerous times to inquire about the status of the sale of the Barge. I was assured the Barge was being actively marketed,
(emphasis added).
¶ 13. With all due respect to the court below, “[credibility determination^, *878 the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.” Garner v. Hickman, 733 So.2d 191, 194(¶12) (Miss.1999) (quoting Benjamin v. Hooper Elec. Supply Co., 568 So.2d 1182, 1187 (Miss.1990)). There was no way for the court in this case to rule as it did without impermissibly weighing the evidence and making credibility determinations, as the court essentially adopted one party’s version of events as true and dismissed the other party’s version entirely.
¶ 14. There is a genuine issue of material fact in this case as to whether Parker was told that it would be paid if the insurance company agreed to pay, or whether Parker was told that it would be paid when the barge was sold. Therefore, the trial court erred in granting summary judgment.

3. Statute of Limitations

¶ 15. The court found that Parker’s suit was filed outside the expiration of the statute of limitations, on the theory that the statute began to run when Parker completed its work and could theoretically request payment from MD & D.
¶ 16. Essentially, the sale of the barge was a condition that triggered MD & D’s obligation to pay Parker. In Anderson v. Lancaster, 215 Miss. 179, 181-82, 60 So.2d 595, 597 (1952) (citations omitted), the Mississippi Supreme Court discussed the effect of such a condition on the statute of limitations: “Where a right of action depends on the happening of an event in the future, ... the cause of action accrues, and the statute of limitations begins to run only at the time when the event happens.” In other words, if payment was dependent on the condition that the barge was sold, Parker’s cause of action did not accrue, and the statute of limitations did not begin to run, until the barge was sold. Therefore, based on Parker’s version of events, the statute of limitations did not begin to run until the sale of the barge, apparently some time in 2003, placing Parker’s suit well within the statute of limitations.
¶ 17. As argument below, MD & D contended that the sale of the barge could not operate as a condition for payment, because MD & D did not actually own the barge. It is unclear to this Court why the actual ownership of the barge prevents the sale from operating as a condition precedent to MD & D’s obligation to pay Parker. From Parker’s version of events, MD & D apparently informed Parker that it would be paid when there was money to do so, ie., when the barge was sold. Clearly, if Parker’s statement of events is true, then Parker’s cause of action arose when the barge was sold, because the condition precedent to Parker’s payment had been fulfilled only at that time. A genuine issue of material fact, sufficient to overcome summary judgment, exists as to whether Parker was told that it would be paid when the barge was sold.
¶ 18. In Harrison Enters., Inc. v. Trilogy Commc’ns, Inc., 818 So.2d 1088, 1096 (¶¶ 35-37) (Miss.2002), in a somewhat factually similar scenario, the Mississippi Supreme Court found that the doctrine of equitable estoppel operated to toll the statute of limitations. Harrison involved a suit on an open account where one party, Trilogy, had attempted repeatedly to recover its debt from Harrison Enterprises, which continually asked Trilogy for more time and promised to pay later. Id. at 1091 (¶¶ 5-10). In finding that equitable estoppel applied, the court noted:
The stated purpose behind the statute [of limitations] is to discourage lawsuits. Further, it is to reward the vigilant, not the negligent. It is to prevent false and *879 stale claims. None of these concerns are exemplified here. Trilogy was trying to solve this problem without resorting to a lawsuit. Trilogy was vigilant in pursuing this debt, relying on the continual reassurances by Harrison Enterprises. This claim is neither false nor stale. Evidence has not been lost, memories have not faded, witnesses are available and the facts are readily capable of production.
Id. at 1096(¶ 35) (emphasis added).
¶ 19. Equitable estoppel applies when (1) one party is induced by another to delay filing a complaint, (2) resulting in the running of the statute of limitations, and (3) the other party “knew or had reason to know that such consequences would follow.” Id. at 1095(¶ 31) (citing PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984)). Like Trilogy, Parker’s version of events indicates that it did not file suit because of regular reassurances from MD & D that the barge would be sold and Parker would be paid when that happened. Like Harrison Enterprises, taking Parker’s facts as true, MD & D knew or should have known that its actions would cause Parker to delay filing suit. Therefore, taking Parker’s version of events as true, as we must for purposes of summary judgment, there is also a genuine issue of material fact as to whether equitable es-toppel acts to toll the statute of limitations in this case.
¶ 20. There are genuine issues of material fact regarding the statute of limitations, and the court erred in granting summary judgment on the basis of the statute.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. An open account is a form of oral contract. McArthur v. Acme Mech. Contractors, Inc., 336 So.2d 1306, 1308 (Miss.1976).