# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00800-COA

**ALAINA HILL ROGERS**                                    **APPELLANT**

**v.**

**CASEY AND CO. LLC**                                    **APPELLEE**

DATE OF JUDGMENT:              05/14/2018
TRIAL JUDGE:                   HON. JOHN ANDREW GREGORY
COURT FROM WHICH APPEALED:     CHICKASAW COUNTY CIRCUIT COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        RICHARD SHANE McLAUGHLIN
ATTORNEY FOR APPELLEE:         REX F. SANDERSON
NATURE OF THE CASE:            CIVIL - CONTRACT
DISPOSITION                    AFFIRMED IN PART; REVERSED AND
                               RENDERED IN PART - 12/10/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., GREENLEE AND TINDELL, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Casey and Co. LLC, owned by Casey Moss,[1] sued Alaina Hill Rogers for damages regarding florist services and materials supplied for Alaina's wedding in May 2017. Alaina's family operates a furniture store in Woodland, Mississippi (Woodlands Furniture). In a bench trial, the court found that in December 2016, before any florist-planning services took place, the parties agreed that Casey would perform the florist services for Alaina's wedding and that Casey could have a sectional sofa, with a pre-tax retail value of $3,799, from Woodlands Furniture. The trial court further found that the value of the sectional sofa would

---

[1] For ease of reference we will sometimes refer to the plaintiff as Casey.

be credited on Casey's final bill to Alaina for her florist services.

¶2. Casey and Alaina subsequently met three times at the wedding-venue site between January 2017 and May 13, 2017, which was Alaina's wedding day. Casey tendered the final bill for the florist services and materials to Alaina. The statement provided an itemized description and price for all materials and labor furnished, totaling $8,872.44, and reflected a $3,799 credit for the sectional sofa, resulting in a final balance of $5,073.44. Alaina refused to pay, contending that the parties' only agreement was that Casey could have the sectional sofa in exchange for her florist services for Alaina's wedding.

¶3. After Alaina refused to pay, Casey & Co. filed its complaint in the First Judicial District of Chickasaw County Circuit Court, seeking recovery on the total amount of indebtedness of $5,073.44, together with costs, interest, and attorney's fees. After a bench trial, the court found in favor of Casey & Co., awarding a judgment in the amount of $5,073.44, together with interest and costs. The trial court also awarded an attorney's fee in the amount of $2,536.72. Alaina appealed.

¶4. For the reasons addressed below, we affirm the trial court's award of the principal amount of the judgment, plus interest and costs. We reverse and render the trial court's decision to award an attorney's fee in the amount of $2,536.72.

### STATEMENT OF FACTS AND COURSE OF PROCEEDINGS

¶5. Plaintiff Casey Moss operates a florist business under the name Casey and Co. LLC. Casey provided florist services and materials to Defendant Alaina Hill Rogers for Alaina's wedding on May 13, 2017, which was also Mother's Day. Alaina's family operates a

furniture business, Woodlands Furniture. The record reflects that in December 2016, Casey was looking for a sectional sofa for her home and found one at Woodlands Furniture. Casey and Alaina reached an agreement for Casey to take the sectional sofa, which had a pre-tax retail value of $3,799, and that amount would be credited on Casey's final bill to Alaina for the florist services and materials for Alaina's wedding.

¶6.    When Casey tendered the final, itemized bill for her florist services and materials to Alaina, which reflected a credit for the sectional sofa, Alaina refused to pay the remaining balance in the amount of $5,073.44. Casey, through Casey & Co., filed a complaint against Alaina in the Chickasaw County Circuit Court on August 18, 2017, seeking to recover the total amount of indebtedness of $5,073.44, together with costs, interest, and attorney's fees. Attached to the complaint was Casey's affidavit of the account and the itemized statement for materials and services that Casey & Co. provided for Alaina's wedding. In the complaint, Casey alleged that Alaina had refused to pay "although often requested to do so."

¶7.    Alaina answered and raised a number of affirmative defenses, including the defense that "there was no agreement between the parties including sufficiently definite terms as to amount to a valid contract."

¶8.    The parties agreed to try the case without a jury, and the bench trial was held on March 22, 2018.

¶9.    Casey testified on behalf of Casey & Co. She testified that in December 2016 she was looking for a sectional sofa at Woodlands Furniture and casually spoke with Alaina's aunt about Casey "get[ting] some furniture for some of the cost of the [florist services] for

[Alaina's] wedding." Casey told Alaina's aunt that she would be meeting with Alaina in January and that she did not know what the wedding would be like because they had not yet met. Casey and Alaina talked after that conversation, and Casey testified that she and Alaina agreed that Casey could pick up the sectional sofa that she liked, and that Casey "would take it off the bill [for her florist services and materials]."

¶10. Text messages between Casey and Alaina were admitted into evidence. These text messages reflect that in December 2016, Alaina agreed that Casey's husband would pick up the sectional sofa and that Woodlands Furniture would hold a blank check from Casey "until after [Alaina and Casey] settle up from the wedding."[2] Casey's husband picked up the sectional sofa in December as the parties agreed. On May 6, 2017 (a week before the wedding), Casey again sent a text message to Alaina to confirm the price of the sectional so that she could "know for wedding billing purposes."

¶11. Casey further testified that she and Alaina met three times in Kilmichael, Mississippi, the place where the wedding would be held. Kilmichael was about forty-five minutes from Casey's place of business in Houston, Mississippi. Casey and Alaina met once in January and once in the first week of May, and then Casey and two other workers spent approximately six hours at the wedding venue on the day of the wedding.

¶12. Casey testified about the labor that went into setting up for the wedding, as well as the labor and materials necessary to create the bouquets, floral arrangements, and other decorations for the wedding. Casey testified that Alaina gave Casey pictures of the bouquets,

---

[2] The record reflects that Casey's husband forgot the blank check, so Casey offered for the store to hold a debit card instead.

4

centerpieces, cake flowers, garlands to drape in the trees at the venue, floral arrangements, and pew markers that Alaina wanted, and these photos were admitted into evidence. Seven hand-written pages of Casey's notes from her meetings with Alaina were also admitted into evidence, detailing the number and descriptions of the various bouquets, corsages, boutonnieres, garlands, greenery, pew markers, table arrangements, cake flowers, vase arrangements, centerpieces, and other decorations that Casey was to furnish.

¶13. The hand-written final invoice that Casey submitted to Alaina's father at the wedding was admitted into evidence, as well as a typed-up version of the same invoice that Casey prepared. The final invoice provided a description and price for all materials and labor furnished, totaling $8,872.44, from which the $3,799 for the sectional sofa was credited, resulting in a final balance of $5,073.44. Casey testified that when she learned that Alaina and her family were not planning to pay the balance of her final statement, she sent a letter memorializing her demand for this amount of money. A detailed statement of services rendered by Casey's lawyer was also admitted into evidence.

¶14. Casey testified that she and Alaina agreed on everything listed on the invoice. With respect to cost, Casey testified that she told Alaina that the flowers would be more costly because her wedding was on Mother's Day. Mother's Day, according to Casey, was very busy for a florist and required her to bring in extra help. Casey also testified that Alaina wanted certain pew markers made from orchid leis that had to be flown in from Hawaii, and Casey told her "a few times" that these would be expensive. Casey suggested that they put them on every other pew, but Alaina "wanted them on every pew, so that's what we did."

5

¶15. As for other pricing, Casey admitted that she and Alaina did not reach an agreement as to a final price. She testified that Alaina never mentioned needing a quote, so she did not give her one. Casey further testified that they were "add[ing] to this account constantly." Copies of entries from Facebook were also admitted into evidence. In these entries, Alaina and Casey were joking with Alaina's father, Jeff Hill, about the wedding services Alaina's father still had to pay for. Casey said, "[H]e just doesn't know does he???" Jeff Hill replied, "[P]retty sure I don't want to either."

¶16. After Casey's testimony, the plaintiff rested. Defense counsel moved for an involuntary dismissal under Rule 41(b) of the Mississippi Rules of Civil Procedure, which the trial court denied.

¶17. Alaina testified on her own behalf. She testified that Casey got the sectional sofa, "and then we agreed that she would do the flowers, and we never agreed upon a price other than the sectional." Alaina confirmed that she did not pay the balance of Casey's invoice that remained after the price of the sectional sofa was credited. She testified that she felt like Casey had already been paid everything that they owed her because she got the sectional. Invoices from other vendors from Alaina's wedding were admitted into evidence. The total amount of these invoices was $10,400.

¶18. On cross-examination, Alaina confirmed that she was satisfied with the work that Casey did and that Casey supplied everything that Alaina wanted her to supply.

¶19. Jeff Hill, Alaina's father, also testified for the defense. He testified that Alaina had told him they did not need to worry about paying for the florist services, as follows: "The

6

only thing I know is my daughter came in and said, Dad, we don't have to worry about one of the bills, the florist. I said, Okay. Why? She said, Because we traded a sectional for her services. Traded some furniture [were] her exact words." Mr. Hill also testified that the food caterer, who also provides florist services in the area, "looked at the job and said it would've been around $3,500." The defense rested.

¶20. The plaintiff called Melissa Murphy, the owner of Amory Flower Shop in nearby Amory, Mississippi, as a rebuttal witness. Ms. Murphy testified that she reviewed the invoice Casey presented for Alaina's wedding and that her own price would be more, specifically $10,007.18, as compared to Casey's total invoice of $8,872.44. Ms. Murphy also testified that she charges a $750 setup-and-tear-down fee, as compared to the $500 fee Casey charged, and that she added travel expenses separately. On cross-examination, Ms. Murphy acknowledged that she generally makes it a practice to provide an estimate, but she has also "done the very same thing Casey has done. There was no price ever mentioned. They want what they want, and we provide the services." The plaintiff then rested.

¶21. The trial court took the matter under advisement, and on May 14, 2018, the court entered a judgment in favor of Casey & Co. The trial court found as follows:

1. The Plaintiff is a florist in Houston, Mississippi, who supplied flowers for the wedding of the Defendant in Kilmichael, Mississippi. The Defendant testified that she was satisfied with the service of the Plaintiff for the wedding.

2. The Defendant has not paid the Plaintiff in full for her wedding,

3. The Defendant is in the retail furniture business. The Plaintiff and the Defendant had an agreement that the Defendant would sell furniture called a sectional to the Plaintiff for the sum of $3,799.00. The

7

Defendant testified that the price did not include sales tax.

4.      The Plaintiff's testimony and the text messages between Plaintiff and Defendant indicated that the cost of the sectional would be credited on the final account for the wedding.

5.      The Plaintiff tendered the statement of account to the Defendant in the amount of $8,872.44. The account shows a credit for the sectional applied in the amount of $3,799.00 with a final balance of $5,073.44.

6.      The Plaintiff introduced into evidence an itemized statement of service and time by her attorney.

The trial judge held that "Plaintiff should recover a judgment for the amount of $5,073.44," together with interest and costs, "and an attorney fee ($2,536.72, ½ of the balance sued for) . . . for a total amount of $8,387.49."

¶22.    Alaina appealed, asserting that (1) the trial court erred by enforcing a contract where both parties to the contract admitted there was no agreement as to price; (2) the trial court erred by awarding an attorney's fee where there was no statutory basis nor agreement to support such an award; and (3) the trial court erred by awarding an attorney's fee in the absence of evidence of the *McKee*[3] factors and with no *McKee* analysis.

¶23.    For the reasons set forth below, we affirm the trial court's decision that Casey & Co. should recover a judgment for the amount of $5,073.44, together with interest and costs. We reverse and render the trial court's decision to award an attorney's fee because we find that attorney's fees were not provide for by contract or statute.

**STANDARD OF REVIEW**

¶24.    "The existence of a contract is a question of fact that is to be determined by a jury, or

---

[3] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

a trial judge when a trial is conducted without a jury." *Bert Allen Toyota Inc. v. Grasz*, 909 So. 2d 763, 768 (¶12) (Miss. Ct. App. 2005). "The standard of review for factual determinations made by the trial judge as the sole trier of fact in a bench trial is the substantial evidence standard." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 19 (¶21) (Miss. Ct. App. 2012) (internal quotation mark omitted). In this regard:

> The findings of the trial judge will not be disturbed unless the judge abused his discretion, was manifestly wrong or clearly erroneous or applied an erroneous legal standard. A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence.

*Id.* at 19-20 (¶21) (citations and internal quotation marks omitted). "However, the Court reviews conclusions of law . . . de novo." *Id*. at 20 (¶21).

## DISCUSSION

### I.     The Enforceability of the Agreement

¶25.    Alaina asserts that the trial court erred in enforcing the agreement between her and Casey because there was no agreement between them on the price of Casey's florist services and materials. In response, Casey asserts that the trial court did not abuse its discretion in finding that the facts supported its determination that Casey should recover the remaining balance of her bill, plus interest and costs, from Alaina. For the reasons addressed below, we affirm the trial court's judgment awarding $5,073.44 in Casey & Co.'s favor, together with interest and costs.

¶26.    We recognize that "[t]he elements of a valid contract are (1) two or more contracting parties; (2) consideration; (3) an agreement that is sufficiently definite; (4) parties with the

9

legal capacity to make a contract; (5) mutual assent; and (6) no legal prohibition precluding contract formation." *Bert Allen Toyota*, 909 So. 2d at 768 (¶12). In this case, Alaina asserts that any agreement between her and Casey was not "sufficiently definite" because they did not have any agreement as to the price of Casey's florist services and materials. In support, Alaina relies on *Leach v. Tingle*, 586 So. 2d 799 (Miss. 1991), a case in which the Mississippi Supreme Court held that "price is an essential term [in a contract]. It must be stated with specificity. Where it is not provided, the contract fails." *Id.* at 803.

¶27. The supreme court also recognized in *Leach*, however, that "[t]his does not mean that the price must be set out simply. Where, from the terms of the contract, one familiar with elementary principles of mathematical reasoning may deduce with certainty the sales price, the contract will not fail." *Id.* Only "[w]here the language employed necessarily requires a substantial measure of speculation and conjecture in ascertaining price, [will] the contract fail[]." *Id.*

¶28. This concept is further developed in a respected treatise on contracts, as follows:

> [A]lthough the necessity for definiteness may compel the court to find that the language used is too uncertain to be given any reasonable effect, *when the parties' language and conduct evidences an intent to contract, and there is some reasonable means for giving an appropriate remedy, the court will strain to implement their intent.* Thus if a promise indefinite as to price is capable of being made certain by an objective standard through extrinsic facts, it will be enforced.

1 *Williston on Contracts* § 4:25, at 771-73 (4th ed. 1990) (emphasis added) (citations omitted). In *Denbury Onshore LLC v. Precision Welding Inc.*, 98 So. 3d 449 (Miss. 2012), the Mississippi Supreme Court likewise recognized this principle, observing that "'[i]f no

statement as to the wages or price to be paid' is listed, the court will 'invoke a standard of reasonableness so that the fair value of the services or property is recoverable.'" *Id.* at 454 n.21 (quoting 1 *Williston on Contracts* § 4:25, at 758-59 (4th ed. 1990)); *see Pugh v. Gressett*, 136 Miss. 661, 101 So. 691, 698 (1924) ("An offer to sell goods need not specify the price, for, if no price is stated, it will be presumed that the reasonable market price was intended.").

¶29. In this case, the trial court found that Casey's testimony and the text messages between Casey and Alaina "indicated that the cost of the sectional would be credited on the final account for the wedding" and that the statement of account that Casey tendered to Alaina showed that Casey applied a credit for the sectional sofa for the agreed upon amount of $3,799.00, leaving a final balance of $5,073.44.

¶30. The trial court also heard the parties' testimony and reviewed the evidence regarding the conduct of the parties, including the meetings between Alaina and Casey, the numerous photos Alaina gave to Casey to show her what she wanted at her wedding, and the copious notes taken by Casey at her meetings with Alaina—evidence of conduct supporting the parties' "intent to contract" for the materials and services Casey provided.

¶31. Further, other than Alaina's and her father's testimonies, we find no evidence to support a theory that the cost of the floral services were limited to the cost of the sectional sofa. Instead, we find that the evidence supports the trial court's determination that the parties would settle up at the end. Indeed, the record reflects that Alaina and her father did not want to know the costs of the floral services. Not only did Alaina fail to ever ask for a

quote or a price on anything, but also the testimony, text messages, and Facebook messages admitted at trial support the finding that Alaina did not have a price limit, but rather she was going to get what she wanted regardless of the price—including flying floral leis in from Hawaii.

¶32.   The record also reflects that Alaina accepted the goods and services provided by Casey & Co., Alaina was satisfied with the work that Casey did, and Casey supplied everything that Alaina wanted her to supply.

¶33.   Finally, Casey's detailed statement of the account, itemizing each item furnished and labor costs, provides the reasonable means to determine the cost so as to allow the trial court to enforce the parties' contractual intentions.   Additionally, the testimony from Melissa Murphy, the owner of Amory Flower Shop in nearby Amory, Mississippi, supports the trial judge's decision that the contract price was reasonable.  *See generally* 1 *Williston on Contracts* § 4:25, at 771-73 (4th ed. 1990).

¶34.   In the light of our deferential review of the trial court's findings, we find that substantial, credible evidence supports the trial court's judgment against Alaina for the amount of $5,073.44, together with interest and costs.  We further find that there was no manifest error in the trial court awarding judgment in Casey & Co.'s favor.

### II.    Award of an Attorney's Fee

¶35.   Alaina asserts that there was no legal basis for an award of an attorney's fee in this case, and thus the trial court's award of $2,536.72 in an attorney's fee should be reversed and rendered.  We agree and find that the trial court's legal conclusion that Casey was entitled

12

to an attorney's fee in this case was made in error.

¶36.   In *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495 (Miss. 2007), the supreme court held that "unless provided by statute or contract, or unless punitive damages are awarded, attorneys' fees may not be recovered." *Id*. at 517 (¶68).  In this case there is no contractual provision allowing for the recovery of attorney's fees, nor do we find that this case involves an open account under Mississippi Code Annotated section 11-53-81 (Rev. 2012), as we address below.

¶37.   This Court's decision in *Douglas Parker Electric Inc. v. Mississippi Design & Development Corp.*, 949 So. 2d 874 (Miss. Ct. App. 2007), supports our determination that this is not an open-account case.  In *Douglas Parker*, this Court held that the trial court was correct in determining that an agreement between a general contractor (MD&D) and a subcontractor (Parker) to pump out a barge damaged in a hurricane was "an oral contract rather than an open account." *Id*. at 876 (¶8).  In reaching this conclusion, this Court first observed that "an open account must contain a 'final and certain agreement on price.'" *Id*. at 877 (¶8) (quoting *McLain v. W. Side Bone & Joint Ctr*., 656 So. 2d 119, 123 (Miss. 1995)). We further observed that "an open account 'results where the parties intend that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made, until it shall suit the convenience of either party to settle and close the account.'" *Id.* (quoting *Motive Parts Warehouse Inc. v. D & H Auto Parts Co.*, 464 So. 2d 1162, 1166 (Miss. 1985)).

¶38.   Applying these principles to the facts before it, the Court found in *Douglas Parker*

that "there [was] scant evidence to indicate that there was any discussion of the price of Parker's services, let alone a 'final and certain agreement on price.'" *Id.* at 877 (¶9). Continuing, the Court found that "[f]urthermore, there was no running balance of credits and debits, nor was payment due at the convenience of either party. Instead, Parker understood that it would be paid when the barge was sold." *Id.* Even though Parker treated the agreement as one on open account by sending a demand letter with its final invoices to MD&D and then initiated a collection lawsuit when it got no response from MD&D, *see id.* at 876 (¶4), this Court found that "the agreement between the parties was in the nature of an oral contract rather than an open account." *Id.* at 877 (¶9).

¶39. These same factors are present in this case. Both Casey and Alaina testified that there was no agreement between them as to price except to the extent that the record showed that Alaina specified exactly what she wanted regardless of the cost. Nor was there a "running balance of credits and debits" or any testimony that either party believed "payment [was] due at the convenience of either party." *Id.* Instead, although the record reflects that Alaina made additional requests and new floral items were added up until Alaina's May 2016 wedding, Casey did not issue interim invoices with a running balance, nor did she request any payment at all until the job was completed and she presented her final, itemized invoice, just as Parker did in *Douglas Parker*.

¶40. In finding that the evidence herein establishes an oral contract but not an open account, we conclude that the trial court erred in awarding an attorney's fee to Casey & Co. for an open account. We therefore reverse and render on this issue. In the light of this

decision, we do not address Alaina's final assignment of error asserting that in awarding an attorney's fee, the trial court erred in failing to utilize the *McKee* factors. *See McKee*, 418 So. 2d at 767.

¶41. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**